In re EAST CORAL, INC., Debtor.

Daniel CRECELIUS, Anahid Crecelius and Angel Melikian, Plaintiffs,

v.

EAST CORAL, INC.; Sam Jonas, trustee, Robert Cariker; Raymond Gregory; Jerilynn Gregory; William H. Temkin, Jr.; Steven Kelly, aka R.D. Kelly, aka Steven Edmondson, Defendants.

Bankruptcy No. SA84–02431RP.

United States Bankruptcy Court, C.D. California.

Nov. 26, 1985.

Ira S. Rubin of Gronemeier, Barker & Huerta, Pasadena, Cal., for plaintiffs.

William H. Temkin, Jr., Santa Monica, Cal., for debtor, East Coral, Inc., defendant.

Steve Kelly, appearing in pro per.

Samuel Salmon, Long Beach, Cal., for William H. Temkin, Jr. as of September 20, 1985.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

RALPH G. PAGTER, Bankruptcy Judge.

### I

### PROCEDURAL HISTORY

This adversary matter was filed seeking relief from the automatic stay for just cause on April 24, 1985, and on April 25 an order was entered pursuant to stipulation granting the requested relief but also reserving certain issues. Fully noticed hearings were held on June 24, July 15, and August 29, 1985. Orders from the July 15 hearing were signed on August 5 and September 4 and entered on August 7 and September 12, 1985, respectively. An order from the August 29 hearing was signed on August 29 and entered on September 12, 1985. *Ex Parte* hearings on shortened notice were held on June 24, July 8, July 15, September 20 and September 26, 1985. The pre-trial order was entered on September 26, 1985, and trial was held on October 24, 25 and 28, 1985.

### II

### FINDINGS OF FACT

The Court, having considered all testimony of witnesses and documentary exhibits presented by plaintiffs and defendants as well as the undisputed facts of the pretrial order, finds that the following facts numbered 1 through 185 have been established.

A. *East Coral Corporate Data.*

1. East Coral, Inc. is a California Corporation which was incorporated on October 22, 1982. Raymond J. Gregory signed the original Articles of Incorporation for East Coral, Inc. Steven Kelly was the initial agent for service of process of East Coral, Inc.

2. East Coral, Inc. was suspended by the California Secretary of State on July 2, 1984, and is not presently in good standing.

3. East Coral, Inc. never filed a statement of names and addresses of officers and the address of its principal office with the California Secretary of State.

3a. East Coral, Inc. has never maintained any minute books.

3b. East Coral, Inc. has never had any by-laws.

B. *The Parties.*

4. Robert Cariker is a resident of the County of San Bernardino, State of California.

5. Raymond J. Gregory aka Ray Gregory has at all times since 1982 been a resident of the County of Orange, State of California.

6. Jerilynn Gregory aka Jerrilyn Gregory has at all times since 1982 been a resident of the County of Orange, State of California.

7. William H. Temkin, Jr. (hereinafter "Temkin"), attorney-at-law, has at all times since 1982 been a resident of the County of Los Angeles, State of California.

8. Steven Kelly aka R.D. Kelly aka Steven Edmondson aka Stephen Edmondson (hereinafter "Kelly") has at all times since 1982 been a resident of the County of Los Angeles, State of California.

9. Daniel Crecelius and Anahid Crecelius are residents of the County of Orange, State of California, and have been at all times since January 1, 1982. Angel Melikian has been a resident of Los Angeles County during that same time.

C. *East Coral I Bankruptcy Petition.*

10. East Coral, Inc. filed its First Voluntary Bankruptcy Petition for a Chapter 11 Reorganization on October 25, 1982 (Case No. SA 82–04758 AP; "East Coral I").

11. East Coral, Inc.'s counsel of record in East Coral I was William H. Temkin, Jr.

12. An Order for Dismissal of the East Coral I Bankruptcy was entered on or about March 30, 1983 or 1984.

D. *East Coral II Bankruptcy Petition.*

13. East Coral, Inc. filed its Second Voluntary Bankruptcy Petition for a Chapter 11 Reorganization on or about December 8, 1983 (Case No. SA 83–05393 PE; "East Coral II").

14. Robert Cariker was listed as Secretary of East Coral, Inc. in the East Coral II Bankruptcy Petition. In that petition, Robert Cariker was also named as one of the persons who owned, controlled, or held 25% or more of the voting securities of the corporation East Coral, Inc.

15. The East Coral II Bankruptcy was dismissed by the Honorable Judge Peter M. Elliot on March 1, 1984. A portion of the order dismissing the East Coral II case reads as follows:

"Neither the debtor nor debtor's counsel appeared in response to the court's order to show cause set for February 28, 1984 concerning the debtor's failure to file Schedule B–2 and B–3 as well as a statement of financial affairs and a statement of executory contracts.

[...] The failure of the debtor to file Schedule B–2, B–3, statement of financial affairs and a statement of executory contracts and its failure to appear at the order to show cause hearing on February 28 show a lack of prosecution of this reorganization case and a complete disregard for this court and its processes. It is therefore

ORDERED that the Chapter 11 case is dismissed."

E.1 *East Coral III Bankruptcy Petition.*

16. On June 14, 1984, East Coral, Inc. filed its Third Voluntary Bankruptcy Petition for Chapter 11 Reorganization (Case No. SA 84–02431 RP; "East Coral III"). This adversary proceeding is within East Coral III.

17. A form for a Chapter 7 filing was used for the East Coral III petition.

18. William H. Temkin, Jr. is listed as Counsel of Record in the East Coral III Petition with the address of 8963 Burton Way, Los Angeles, California 90048.

19. William H. Temkin, Jr. has never filed a Notice of Change of Address in the East Coral III proceedings.

20. The signature of William H. Temkin, Jr. on the first page of the East Coral III Petition was affixed by Steven Kelly.

21. The signature of William H. Temkin, Jr. on the East Coral III "List of 20th Largest Creditors" was affixed by Steven Kelly.

22. The signature of William H. Temkin, Jr. on the East Coral III "Statement of

Attorney for Petitioner Pursuant to Bankruptcy Rule 219(b)" was affixed by Steven Kelly.

23. The signature of William H. Temkin, Jr. on the certification of the Master Mailing List for the East Coral III Petition was affixed by Steven Kelly.

24. Steven Kelly was an agent of William H. Temkin, Jr. at the time that Kelly affixed Temkin's signature in the four places referred to above and has been an agent of Temkin's at all times since.

25. William H. Temkin, Jr. did not see, draft, or approve the East Coral III Bankruptcy Petition prior to the time that it was filed.

25a. William H. Temkin, Jr. did not see any part of the East Coral III petition until July 15, 1985, and did not see the entirety of the East Coral III petition until August 16, 1985.

26. William H. Temkin, Jr. did, subsequent to the filing of the East Coral III Bankruptcy Petition, make appearances for and sign pleadings and other documents on behalf of East Coral, Inc. in connection with the East Coral III proceedings.

27. Steven Kelly was suspended from the active practice of law on or about May 8, 1981.

28. Steven Kelly tendered his resignation as a member of the California State Bar on or about April 27, 1982. That resignation was accepted by the California Supreme Court on October 5, 1983.

29. William H. Temkin, Jr. knew that Steven Kelly was not authorized to practice law during the pendency of the East Coral III proceedings.

30. Raymond J. Gregory signed the East Coral III Bankruptcy Petition as President of East Coral, Inc. and was and is its President.

31. The statement in the East Coral III petition on "Exhibit 'A' to petition by corporation" that "Petitioner's Employer's Identification Number is being applied for separately" was false.

32. The statement in the East Coral III petition on "Exhibit 'A' to petition by corporation" that the "Number of Shares of Common stock Re issuances is taking place" was false.

33. Raymond J. Gregory and Robert Cariker owned, controlled, or held, with power to vote, 25% or more of the voting securities of East Coral, Inc. as of June 14, 1984.

34. The statement on the Rule 909 form in the East Coral III Petition that East Coral, Inc. "filed another Petition re Capistrano property which was dismissed by Court pursuant to agreement ..." is not true.

F. *East Coral III Case Proceedings.*

34a. The U.S. Trustee's Office sent a letter and questionnaire to Temkin and East Coral on or about June 26, 1984. The questionnaire was never completed and returned.

35. Ray Gregory and Robert Cariker were designated to perform the duties of East Coral, Inc. by Order of the Honorable Ralph G. Pagter, on or about June 27, 1984.

36. On July 19, 1984, East Coral, Inc. was ordered to appear at a § 341(a) meeting of creditors.

37. East Coral, Inc. did not appear at a § 341(a) hearing in the East Coral III case on August 8, 1984.

38. William H. Temkin, Jr. did sign his name on an Ex Parte Application for approval for Property Management Agreement which was filed in the East Coral III case on or about August 27, 1984. In that same document, Raymond J. Gregory acknowledged being President of East Coral, Inc. and one of the Court appointed officers pursuant to Bankruptcy Rule 9001(5).

38a. On September 20, 1984, William H. Temkin, Jr. had a conversation with Lynn Russell, paralegal specialist for the U.S. Trustee's Office. Russell sent Temkin a letter, copy of notice requirements, and Case Status Questionnaire on that same day.

39. East Coral, Inc. has never filed a Plan of Reorganization or a Disclosure Statement in the East Coral III proceeding.

40. East Coral, Inc. never provided a verification of insurance, interim statements, operating reports, a Case Status Questionnaire, or monthly narrative statements in the East Coral III proceeding.

41. An *ex parte* application for approval of amended sale escrow instructions and other relief was filed by East Coral, Inc. on December 18, 1984. Raymond J. Gregory affixed his name to the Application. William H. Temkin, Jr.'s name on the *ex parte* application was signed by Steven Kelly.

42. The *ex parte* application for approval of amended sale escrow instructions, etc. filed in the East Coral III case on December 19, 1984 was prepared by Steven Kelly.

G. *Cal Kona III.*

43. On or about December 18, 1984, the real property which had been alleged by East Coral, Inc. in the East Coral III Bankruptcy Petition to be owned by East Coral, Inc. ("the Oceanside Mall") was transferred to a corporation known as Cal Kona, Inc., and a third Voluntary Chapter 11 Bankruptcy was filed by Cal Kona, Inc. (Case No. SA 84–04945 PE; "Cal Kona III"). William H. Temkin, Jr. was listed as attorney of record for Cal Kona, Inc. in the Cal Kona III Bankruptcy Petition.

44. The signature of William H. Temkin, Jr. to the Cal Kona III Petition was affixed on the first page by Steven Kelly.

45. The signature of William H. Temkin, Jr. in Cal Kona III petition on the "the Statement of Attorney for Petitioner pursuant to Bankruptcy Rule 219(b)" was affixed by Steven Kelly.

46. Steven Kelly prepared the Cal Kona III Bankruptcy Petition.

47. Robert Cariker signed the Cal Kona III Bankruptcy Petition as President.

48. The "Exhibit 'A' to petition by corporation" filed in the Cal Kona III proceeding was identical to that filed in the East Coral III Petition, except that the name East Coral, Inc. was interlineated to Cal Kona, Inc. and the date 6/14/84 was changed to 12/19/84.

49. William H. Temkin, Jr., subsequent to the filing of the Cal Kona III Bankruptcy Petition, entered appearances on behalf of Cal Kona Inc. in Cal Kona III proceedings and actually signed his name to pleadings or documents on behalf of Cal Kona Inc.

H. *East Coral III Conversion Motion and Order.*

50. On or about December 6, 1984, the United States Trustee for the Central District of California filed a motion for dismissal or conversion of the East Coral III case. Said motion was served on or about December 3, 1984 on Temkin at 2607 Second Street, Santa Monica, California 90405 and on East Coral, Inc. at 16162 Beach Blvd., Suite 100, Huntington Beach, California 92647.

51. Temkin moved to 2607 Second Street, Santa Monica, California 90405 on or about July 28, 1984.

52. Temkin's brother, Sheldon Temkin, moved into Temkin's Burton Way residence in July 1984 and remained there through March or April 1985, collecting and giving mail to William H. Temkin, Jr.

52a. William H. Temkin, Jr. filed a notice of change of address with the U.S. Postal Service forwarding his mail from Burton Way to 2607 Second Street, and he still received Burton Way mail in August, 1985.

53. On January 22, 1985, the U.S. Trustee's motion to dismiss or convert the East Coral III case was heard. No appearance was made on behalf of East Coral, Inc.

54. On or about February 8, 1985, the U.S. Trustee's office served the proposed order stemming from the January 22, 1985, hearing converting the case to one under Chapter 7 and directing the debtor to file a final report and schedule of debts. Said proposed order was served on, among others, attorney Temkin at his 2607 Second

Street, Santa Monica address and East Coral at its corporate address.

55. The proposed order read, in part, as follows:

"3. If the debtor is operating a business at that time, such business operations shall cease and the assets shall be turned over to the Chapter 7 trustee at that time.

4. Pursuant to Bankruptcy Rule 1019(6), the debtor is ordered to file with the Bankruptcy Court a final report and accounting within 30 days after the effective date of this order. The debtor is further ordered and directed to prepare and file a separate schedule in duplicate with the Court listing unpaid debts incurred by the debtor after the commencment of the Chapter 11 case. If the debtor has no unpaid bills after the filing of the petition, the report to the Court should so indicate."

56. No objections were filed by East Coral, Inc. to the proposed order.

57. On or about February 21, 1985, the proposed order converting East Coral III case to one under Chapter 7 and directing the debtor to file a final report and schedule of debts was entered and filed. The final order ("February 21, 1985 Order") was unchanged from the proposed order.

58. East Coral, Inc. failed to turn over its assets to the Chapter 7 trustee pursuant to the February 21, 1985 Order.

59. East Coral, Inc. failed to file with the Bankruptcy Court a final report and accounting within 30 days after the effective date of the February 21, 1985 Order.

60. East Coral, Inc. failed to file a separate schedule in duplicate with the Bankruptcy Court listing unpaid debts incurred by East Coral, Inc. after the commencment of the Chapter 11 case or stating that there were no such unpaid bills after the filing of the petition.

61. On April 1, 1985, East Coral, Inc. was ordered to appear at a § 341(a) meeting of creditors on April 29, 1985 by Judge Ralph G. Pagter.

62. East Coral, Inc. failed to appear at a section 341(a) meeting of creditors on April 29, 1985.

63. East Coral, Inc. failed to appear at a continued section 341(a) meeting of creditors on June 10, 1985.

64. East Coral, Inc. failed to cease its business operations pursuant to the February 21, 1985 Order.

65. Sam Jonas was appointed interim Chapter 7 trustee for the East Coral III bankruptcy on or about February 28, 1985.

I. *East Coral III and Yucatan Property.*

66. On or about January 29, 1985, real property located in the County of Los Angeles was transferred to East Coral, Inc. by Franklin Frisaura. The legal description of said property is:

"Parcel A of Parcel Map L.A. # 3290, in the City of Los Angeles, as per map filed in book 80, pages 14 and 15 of Maps, in the office of the county recorder of said county"

Said property is more commonly known as 21530 Yucatan Avenue, Woodland Hills, California 91364 ("Yucatan Property").

67. At the time of said transfer, a foreclosure sale on the Yucatan property was set to take place on January 30, 1985.

68. The Yucatan Property had nothing to do with East Coral, Inc. other than the fact that the East Coral, III pending bankruptcy was utilized for the purpose of invoking the automatic stay provisions of 11 U.S.C. § 362 and to stop the foreclosure sale scheduled to commence on January 30, 1985 in connection with the Yucatan property.

69. William H. Temkin, Jr., as counsel for East Coral, Inc., in East Coral III has engaged in negotiations with Robert Hirschman, counsel for plaintiffs in the case of *Gabor Rosenberg et al. v. East Coral, Inc.*, adversary number M5–0393 RP, a case involving the Yucatan Property. In connection therewith, Temkin signed a stipulation to take judgment on or about April 12, 1985.

70. Also in connection with M5–0393 RP, an answer was filed by East Coral, Inc. on or about April 10, 1985. William H. Temkin, Jr. was listed as counsel of record for East Coral, Inc. on the answer and a signature purporting to be that of William H. Temkin, Jr. appeared at page 3 of the answer.

71. William H. Temkin, Jr. did not draft the answer in M5–0393 RP, did not sign the answer, and did not authorize the answer to be filed on his behalf or using his name.

72. Steven Kelly signed William H. Temkin, Jr.'s name to the answer in M5–0393 RP.

73. Franklin Frisaura signed a verification in connection with the answer in M5–0393 RP, stating that he was an officer of East Coral, Inc.

73a. Raymond Gregory offered to sell East Coral, Inc. to Franklin Frisaura while the East Coral III Proceeding was pending so that Frisaura could utilize the benefit of the automatic stay.

### J. *The Keswick Property.*

74. On or about February 16, 1982, plaintiffs Daniel Crecelius, Anahid Crecelius, and Angel Melikian, executed a grant deed conveying to L. John Rose and Carolyn Rose real property described as follows:

> "Lot 384 of Tract 4416 as per map recorded in Book 175, pages 48 to 50 of miscellaneous maps, in the office of the county recorder of the county of Orange, State of California"

and more commonly known as 19858 Keswick Lane, Huntington Beach, California (hereafter "Keswick Property"). Said grant deed was recorded by the Orange County Recorder on March 29, 1982 as document number 82–107866.

75. On or about March 29, 1982, L. John Rose and Carolyn Rose executed a deed of trust and assignment of rents securing a promissory note in the principal amount of $60,124.46. Plaintiffs Daniel Crecelius, Anahid Crecelius, and Angel Melikian were the beneficiaries under said deed of trust, which was recorded by the Orange Country Recorder's office on March 29, 1982, as instrument number 82–107867. The deed of trust is hereinafter referred to as the "Rose Deed of Trust".

76. The Rose Deed of Trust was a purchase money deed of trust securing a promissory note given in consideration for the plaintiffs' sale of the Keswick property to the Roses.

77. On October 29, 1984, plaintiffs initiated through the trustee of the Rose Deed of Trust a recording of a notice of default on the Rose Deed of Trust as instrument number 84–444953 in the office of the Orange County Recorder.

### K. *February 27–28 Events.*

78. On February 28, 1985, Chris Zorn of Home Escrow Company, trustee under the Rose Deed of Trust, noticed and had conducted a trustees' sale on the steps of the Municipal Courthouse in the City of Orange, California. The sale was held and completed by 10:20 a.m. with no bidders appearing and as such plaintiffs would normally be entitled to vested title and a Trustee's Deed for the Keswick Property.

79. After the completion of the February 28, 1985, Trustee's sale, a messenger from East Coral, Inc., sent by Raymond J. Gregory and Steven Kelly, served on the auctioneer copies of certain documents from the East Coral III bankruptcy case, including a copy of the face sheet of the East Coral III bankruptcy petition, a copy of the notice of the January 22, 1985 hearing, and a copy of the proposed order from that hearing.

80. On February 27, 1985, Steven Kelly telephoned Chris Zorn of Home Escrow Company, and informed her that East Coral, Inc. had become the title holder to the Keswick Property and that the automatic stay barred further foreclosure action on the Keswick Property.

81. On February 28, 1985, at 2:20 p.m. a quitclaim deed was recorded with the Orange County Recorder's Office as document number 85–070540. Said deed pur-

ported to show the transfer of the Keswick Property from L. John Rose and Carolyn Rose to Raymond Gregory and Jerilynn Gregory. Said document was dated October 5, 1983 and contained the notarization of Laura L. McKee, dated October 14, 1983.

82. On February 28, 1985, at 2:20 p.m., a quitclaim deed was recorded in the Orange County Recorder's Office as document number 85–070541. Said deed purported to show the transfer of the Keswick Property from Raymond J. Gregory and Jerilynn Gregory to East Coral, Inc., a California corporation. The document was signed by Raymond J. Gregory and Jerilynn Gregory and dated February 27, 1985. It purported to have been notarized by Carolyn Kroger on February 27, 1985.

83. Both quitclaim deeds bore the handwritten notation "No consideration. Agent to principal" in the space for documentary transfer tax.

84. The transfer of the Keswick Property from the Gregory's to East Coral, Inc. was done for the sole purpose of obtaining the benefit of the automatic stay provided by the East Coral III bankruptcy.

85. The Keswick Property had no relation to East Coral, Inc. on, before, or after February 27, 1985, other than the fact that title to the property was put in the name of East Coral, Inc.

86. No documents exist other than the quitclaim deed memorializing or confirming a business arrangement justifying the transfer of the Keswick Property from the Gregorys to East Coral, Inc.

87. Neither the Gregorys nor East Coral, Inc. ever informed the Huntington Continental Townhouse Association No. 1 that the Keswick Property had been transferred to East Coral, Inc.

88. Following the transfer of the Keswick Property to East Coral, Inc., Home Escrow Company refused to execute a trustees' deed or carry out a new trustee's sale of the Keswick Property until an order of court was obtained removing the bankruptcy automatic stay from the property.

89. A letter containing the signatures of Raymond J. Gregory and William H. Temkin, Jr. was sent to Home Escrow Company on or about January 31, 1985, authorizing Home Escrow Company to give to William H. Temkin, Jr. and his associates information pertaining to the Keswick Property. Gregory signed the letter and gave it to Steven Kelly to process.

90. In a letter dated February 1, 1985, on Shoreline Associates Realtors stationery to plaintiff Daniel Crecelius regarding the Keswick Property, Steven Kelly described himself as "associate of attorney William Temkin".

91. East Coral, Inc. did not turn the Keswick Property over to the Chapter 7 trustee pursuant to the February 21, 1985 Order.

92. East Coral, Inc. did not seek permission of the Bankruptcy Court to acquire title to the Keswick Property.

93. East Coral, Inc. did not inform the U.S. Trustees Office or the Chapter 7 trustee appointed in this case of its acquisition of the Keswick Property.

### L. *Jerilynn Gregory Background.*

94. Jerilynn Gregory obtained a real estate license from the State of California Department of Real Estate in or about September 1978. That license has been twice renewed and is currently set to expire on December 22, 1986.

95. Jerilynn Gregory has been employed as a real estate sales person by Raymond J. Gregory, Inc. doing business as Shoreline Associates from 1974 through the present time.

### M. *Defendants' and East Coral.*

96. Robert Cariker was an officer, shareholder and principal of East Coral, Inc. at the time the Keswick Property was transferred by the Gregorys to East Coral.

97. Steven Kelly was performing work on behalf of William H. Temkin, Jr. and East Coral, Inc. at the time the Keswick Property was transferred from the Gregorys to East Coral.

97a. Steven Kelly has been a vice president and director of East Coral, Inc. at all times since the filing of the East Coral III petition.

98. William H. Temkin, Jr. was counsel of record in the East Coral III bankruptcy proceeding at the time the Keswick Property was transfered from the Gregorys to East Coral.

### N.1 *Defendants' June, 1985 Actions.*

99. Plaintiffs herein timely filed and set for hearing on June 24, 1985, a Notice of Supplemental Motion and Supplemental Motion for Order and Order to Show Cause Re Turning Over of Collected Rent; Payment of Attorneys Fees'; and Punitive Sanctions, etc. In said motion, plaintiffs informed defendants that each party opposing the motion was required pursuant to Central District Bankruptcy Rule 904(f)1 to serve and file, not later than 10 days prior to the hearing date, a written response or a written statement that the motion would not be opposed.

100. On or about June 17, 1985, Steven Kelly (using the name R.D. Kelly) served on plaintiffs' counsel a document captioned "Notice of Opposition to Motion for Payover of 'Rents' and Other Relief". Said notice of opposition stated, in part, "all defendants oppose the motion and give notice of their intention to file declarations and points and authorities in opposition thereto on the 18th day of June, 1985." Said document was allegedly dated June 14, 1985. Said document contained a line for William H. Temkin, Jr.'s signature, but the document served on plaintiffs' counsel was unsigned.

101. The "Notice of Opposition" referred to, *supra*, was prepared and served by Steven Kelly. The document was not filed with the Court. Neither Kelly nor Temkin informed plaintiffs or their counsel until depositions were taken in late August 1985, that the notice of opposition was never filed with the Court.

102. No declarations and points and authorities in opposition to plaintiffs' motion were filed on June 18, 1985.

103. On or about June 20, 1985, Steven Kelly filed a document on behalf of William H. Temkin, Jr. captioned "Ex Parte Application for Continuance of Hearing Date on Motion and Supplemental Motion and Ex Parte Motion to Strike from Complaint, Declarations, Exhibits, and Request for Judicial Notice Prior to Filing Full Opposition and Response of Pleadings." The *ex parte* application was set for hearing on June 24, 1985 at 9:00 a.m., one hour before plaintiffs' motion.

104. The declaration of William H. Temkin, Jr. regarding *ex parte* notice erroneously states that notice was given to Ira Rubin, when in fact notice was given to plaintiffs' counsel Christopher A. Sutton.

105. The June 20 *ex parte* application did not contain points and authorities.

106. The June 20 *ex parte* application included requests to strike relevant portions of plaintiffs pleadings.

107. The June 20 *ex parte* application contained no statement of reasons why *ex parte* relief was required.

108. The *ex parte* application was not accompanied by a declaration indicating that it was filed in good faith and had merits.

109. The *ex parte* application did not contain a case number or a reference number.

110. The *ex parte* application did not comply with Court rules pertaining to the proper blue backing and hole punching of documents.

111. William H. Temkin, Jr. filed opposition to plaintiffs motion on or about June 20, 1985. Said opposition contained factual statements not authenticated by declarations or in any other competent manner.

112. At the hearing on the *ex parte* application heard at 9:00 a.m. on June 24, 1985, William H. Temkin, Jr. indicated that he was appearing on behalf of East Coral, Inc., Robert Cariker, Raymond Gregory, Jerilynn Gregory, and William H. Temkin, Jr. in the within proceeding. The *ex parte* application for continuance was granted

based upon the assertion by Temkin that he would be obtaining a substitution of counsel in his stead. A new hearing date of July 15, 1985 was set with the acquiescence of Temkin.

N.2 *Defendants' Actions Through July 8.*

113. On or about July 1, 1985, Temkin filed a Motion to Strike on Behalf of Debtor and all defendants except Steven Kelly. Said motion was never served on plaintiffs or their counsel. Plaintiffs had no knowledge of the motion until July 6, 1985.

114. The motion to strike filed on July 1, 1985, was not filed more than 17 days before the hearing date of July 15, 1985.

115. The motion to strike filed on July 1, 1985, and set for July 15, 1985 failed to include a notice of motion.

116. The motion to strike filed on July 1, 1985, failed to include a statement of points and authorities.

117. On or about July 5, 1985, Temkin filed a second *ex parte* application, this one seeking to advance and rule upon his Motion to Strike and an *ex parte* application for additional time to file opposition and for continuance of the July 15 hearing date. This second *ex parte* application was set for hearing on July 8, 1985 at 9:00 a.m.

118. The second *ex parte* application was denied on July 8, 1985.

O. *Defendants' Actions Through July 15.*

119. Defendants did not file opposition to plaintiffs' July 15 hearing ten days prior to the hearing. Instead, they filed opposition on the morning of the 15th. Plaintiffs' notice of motion for July 15 specifically informed defendants that each party opposing the motion was required pursuant to Central District Bankruptcy Rule 904(f)1 to serve and file, not later than 10 days prior to the hearing date, a written response or a written statement that the motion would not be opposed.

120. Plaintiffs' counsel made a trip to Temkin's residence/office in Santa Monica on the evening of July 12, 1985, based on Temkin's assurances that defendants' opposition to plaintiffs' July 15 motions would be available to be picked up. It was not. Temkin's assurances necessitated several additional trips during the weekend of July 13–14 by plaintiffs' counsel Ira S. Rubin to Temkin's residence/office.

121. In the declaration of Raymond J. Gregory filed on July 15, 1985, Gregory admitted causing the transfer of the title of the Keswick Property to East Coral, Inc. to obtain the benefit of the automatic stay.

122. Temkin filed a document captioned in part "Points and Authorities in Support of Motion to Strike" on the morning of July 15, 1985, in connection with his July 15, 1985, unserved Motion to Strike. Said "points and authorities" consisted of nothing more than four pages of material photocopied from a research book.

123. Temkin failed to withdraw as counsel prior to the July 15 hearing.

124. A declaration of Steven Kelly was filed on July 15, 1985.

125. In that declaration Steven Kelly stated that he had never been convicted of a felony.

126. Steven Kelly was convicted of violations of California Penal Code § 115 (offering false or forged instruments to be filed of record), § 470 (forgery of instruments) and § 487.1 (grand theft) on or about April 22, 1982, in the matter of *The People v. Steven Edmondson,* Los Angeles County case number A368446. Said conviction is presently on appeal. On June 8, 1984, Kelly was admonished to refrain from practicing law without a license by the Honorable Florence Pickard.

127. The defendants East Coral, Inc., Robert Cariker, Raymond Gregory, Jerilynn Gregory, and William H. Temkin, Jr. filed opposition to plaintiffs' July 15, 1985, motion on the morning of July 15, 1985. Said opposition was not served on plaintiffs until the morning of July 15, 1985.

128. At the hearing on July 15, 1985, Temkin was ordered by the Court to file a

motion to be relieved as counsel for East Coral, Inc., Robert Cariker, Raymond Gregory, and Jerilynn Gregory by the close of business on Thursday, July 18, 1985. The Court further ordered that until Temkin was relieved as counsel plaintiffs could conduct discovery with the defendants East Coral, Inc., Robert Cariker, Raymond Gregory, Jerilynn Gregory, and William H. Temkin, Jr. through Temkin. An order was also issued against Steven Kelly.

129. At the hearing of July 15, the Court set a September 6 discovery cut-off date.

130. At the hearing on July 15, the Court set this matter for trial on October 2, 1985.

131. At the hearing on July 15, 1985, the Court held that it had the jurisdiction and the power to impose sanctions for a breach of the rules of the Court under 11 U.S.C. § 105.

132. At the hearing on July 15, 1985, the Court held that the issues to be determined at the trial on October 2, 1985 were whether the East Coral III bankruptcy petition was a filing lacking good faith and whether the handling of all matters pertaining to East Coral III case lacked good faith.

P. *Defendants' Post July 15 Actions.*

133. On or about July 18, 1985, Temkin filed a document with the court captioned "Notice of Withdrawal as Attorney of Record Pursuant to Order of Court".

134. As of September 10, 1985, Temkin had not filed a motion to withdraw.

135. On or about July 18, 1985, Temkin sent a letter to Judge Pagter relating, in part, to the within adversary proceeding. Temkin did not serve plaintiffs' counsel with a copy of the letter or notify plaintiffs' counsel that he was communicating with Judge Pagter in said fashion.

Q. *Raymond J. Gregory Bankruptcy.*

136. On July 8, 1985, a petition for an involuntary adjudication of bankruptcy against Raymond J. Gregory, Inc., dba Shoreline Realtors and Raymond J. Gregory, individually, was filed in the United States Bankruptcy Court for the Central District of California, Santa Ana branch, and was assigned case number SA 85–02598 RP. Said petition was allegedly signed by William H. Temkin, Jr., Malcolm Gulesarian, and Steven Kelly. The petition was dated July 8, 1985 and contained a verification dated 6/8/85.

137. Temkin's signature was affixed to the petition and verification by Steven Kelly.

138. At the hearing on July 15, 1985, Temkin did not inform the Court or plaintiff's counsel that he had placed his client, Raymond J. Gregory, into involuntary bankruptcy.

139. Temkin subsequently signed a stipulation requesting that the automatic stay be removed so that plaintiffs herein could proceed to trial against Raymond Gregory.

R. *Defendants' Discovery Obligations.*

140. Temkin has not initiated any discovery in this adversary proceeding.

141. William H. Temkin, Jr. failed to fully comply with the Request for Production of Documents served on him by plaintiffs.

142. William H. Temkin, Jr. failed to produce at his deposition all of the documents which plaintiff had requested be produced at the deposition.

143. Steven Kelly failed to produce at his deposition all of the documents which had been subpeonaed by plaintiffs for that deposition, even though plaintiffs had provided Kelly with a 7 day extension of his deposition date at his request.

144. East Coral, Inc. failed to timely comply with a request for production of documents served on it by plaintiffs, even though the time of that document production was extended for 6 days pursuant to defendants' request.

145. East Coral, Inc. failed to produce at its deposition documents which plaintiffs had requested be produced at the deposi-

tion, even though its deposition was postponed six days pursuant to defendants' request.

146. East Coral, Inc. failed to produce individuals competent to testify on matters specified in plaintiffs' Notice of Deposition of East Coral, Inc.

147. Raymond Gregory failed to produce most of the documents which plaintiffs' requested that he bring to his deposition, even though that deposition was continued for 6 days at defendants' request.

148. Raymond Gregory failed to comply with plaintiffs' notice to produce documents, even though the production date was continued for 6 days at defendants' request.

149. Jerilynn Gregory failed to appear for her deposition on the date and time scheduled, even though no extension had been reached between opposing parties.

150. Jerilynn Gregory failed to produce documents pursuant to plaintiffs' Request for Production of Documents at the date and time specified.

151. Jerilynn Gregory failed to appear for her deposition on August 27, 1985, though arrangements had been made for her deposition to be conducted on that date.

152. William H. Temkin, Jr. and Steven Kelly unilaterally set Jerilynn Gregory's deposition at a place different from that set by plaintiffs' counsel.

153. William H. Temkin, Jr. and Steven Kelly unilaterally set Jerilynn Gregory's deposition at a time and date other than that requested or sought by plaintiffs' counsel.

154. When Jerilynn Gregory's deposition finally took place, she failed to comply with plaintiffs' request to produce documents at deposition.

155. Jerilynn Gregory failed to comply with plaintiffs' Request for Production of Documents.

156. Robert Cariker has failed to comply with plaintiffs' Request for Production of Documents.

157. Robert Cariker failed to appear at his deposition.

158. In his notice of taking depositions of plaintiffs Daniel Crecelius and Anahid Crecelius, Steven Kelly acknowledged the right of plaintiffs to complete the depositions of Jerilynn Gregory and Robert Cariker prior to commencing the depositions of the Crecelius'. Notwithstanding that concession, plaintiffs allowed Daniel Crecelius' deposition to go forward even though Robert Cariker was not made available for deposition.

159. No response was filed by William H. Temkin, Jr. to "Plaintiffs' First Set of Interrogatories to Defendant William H. Temkin, Jr."

160. No response was filed by Robert Cariker to "Plaintiffs' First Set of Interrogatories to Defendant Robert Cariker".

161. No response was filed by Jerilynn Gregory to "Plaintiffs' First Set of Interrogatories to Defendant Jerilynn Gregory".

162. No response was filed by Raymond Gregory to "Plaintiffs' First Set of Interrogatories to Defendant Raymond Gregory".

163. No response was filed by East Coral, Inc. to "Plaintiffs' First Set of Interrogatories to Defendant East Coral, Inc.".

164. Temkin signed and filed a pleading prepared by Kelly, even though Kelly was in propria persona.

S. *Defendants' Relationship to Debtor.*

165. As of November 13, 1984, Robert Cariker had a one half equity interest and a one half stock ownership interest in East Coral, Inc.

166. On November 13, 1984, Raymond J. Gregory, Jerilynn Gregory, and Robert Cariker became sureties on behalf of East Coral, Inc.

167. Steven Kelly signed a declaration in a matter involving East Coral, Inc. on May 7, 1985, in which he stated that he had been an inactive member of the bar since May 8, 1981.

168. On June 19, 1985, Findings of Fact and Conclusions of Law were signed by the honorable Ralph G. Pagter, U.S. Bankruptcy Judge in the matter of *Pacific Savings Bank v. Cal Kona, Inc., East Coral, et al.* reference number 85–0180 (case number SA 84–04945 RP). Those findings are now final and are incorporated by this reference.

T. *Plaintiffs' Damages.*

169. Plaintiffs originally hired their counsel in this action on an hourly basis.

170. On or about July 28, 1985, the nature of plaintiffs financial fee arrangement with their counsel changed and plaintiffs counsel were hired under a contingent fee arrangement.

171. Plaintiffs have directly incurred hourly attorneys fees and costs in this matter totalling $24,432.49 for services performed through July 28, 1985, and this amount has been paid or is still owed to plaintiffs' attorneys Gronemeier, Barker & Huerta.

172. The total amount of attorneys' fees in this matter incurred by plaintiffs' attorneys at their regular hourly rates for attorneys' fees for services actually performed on behalf of plaintiffs through trial was $59,449.00.

173. Actual costs in this matter, either incurred by plaintiffs or expended on their behalf by plaintiffs' attorneys, total $8,095.61.

174. The total amount of attorneys fees and costs incurred by plaintiffs or their counsel in this matter totals $67,544.61.

U. *Supplemental Findings.*

175. The defendant East Coral, Inc., acting through its then alleged officer Raymond Gregory, and through its alleged counsel William H. Temkin, Jr. and his agent Steven Kelly, filed the within bankruptcy petition for a bad faith purpose, mainly to harass and delay parties from proceeding with their rights to foreclose.

176. William H. Temkin Jr., as counsel for the debtor, made no reasonable inquiry before authorizing Steven Kelly to sign the bankruptcy petition on Temkin's behalf. Temkin had no knowledge or pre-knowledge of the filing, yet permitted someone to sign a document in his name under penalty of perjury to start a bankruptcy petition in a case for reorganization.

177. This debtor in this case, similar to the other cases filed by the same individual defendants through the same counsel, was in the process of acquiring some property not with any funds or obligations on behalf of this debtor, but through the use of some funds or obligations of the individuals associated with it.

178. Plaintiffs rightfully feared that the debtor and defendants would transfer the Keswick Property possibly to another entity or further manipulate plaintiffs in light of the defendants' prior bankruptcy activities, and in light of the acquisition of this debtor's property by Cal Kona, Inc. through a friendly foreclosure of a fourth trust deed in the third Cal Kona case.

179. Mr. Gregory, in his November 13, 1984, declaration (Exhibit 81), did not disclose any interest whatsoever in the Keswick Property, which is at variance with his testimony at trial.

180. The foreclosure of May 2, 1985 on the Keswick Property extinguished all of Dr. Rose's obligations under the note and trust deed.

181. The hourly rates of $55.00 and $100.00 charged by plaintiffs' two counsel herein are substantially less than that usually charged by skilled bankruptcy practitioners.

182. Plaintiffs have suffered actual damages in the attorneys' fees which they have become obligated to pay, or have paid.

183. Plaintiffs are entitled to recover costs in the sum of $2,202.55 and not the substantially higher amount of $8,095.61 that plaintiffs sought. The balance are disallowed.

184. The Court will allow $30,000.00 in attorneys' fees as reasonable fees. The individual defendants will be allowed an

offset of $7,500.00, namely the plaintiffs' May 2, 1985, credit bid.

185. In the event that any of the Conclusions of Law hereinafter stated are deemed to be Findings of Fact, the Court hereby adopts such Conclusions of Findings of Fact and incorporates them herein as though set forth as Findings of Fact.

## III

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law in this matter:

1. The Court has jurisdiction in this matter pursuant to 11 U.S.C. § 105, 11 U.S.C. § 362, 28 U.S.C. § 1471, and 28 U.S.C. § 1927, sitting as a Court with all the powers of law and equity.

2. Bankruptcy petitions must be filed in good faith pursuant to Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11.

3. The filing of a bankruptcy petition under Chapter 11 is one for reorganization, and not for organization of the debtor.

■ 4. Attorneys' fees and costs will be awarded to the prevailing party in federal litigation, including bankruptcy matters, where the opposing party has acted in bad faith, vexatiously, or for oppressive reasons. *Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), *Re Bayport Equities*, 36 B.R. 575, 11 B.C.D. 671, 10 C.B.C.2d 160 (Bk.Ct.C.D.Cal.1983), *United States v. Blodgett*, 709 F.2d 608 (9th Cir.1983).

■ 5. The Bankruptcy Court may award attorneys' fees and costs for violation of Court orders with a finding that the violation was willful. *Perry v. O'Donnell*, 759 F.2d 702 (9th Circuit, 1985) and *Re Cecchini*, 85 Daily Journal DAR 3383, 772 F.2d 1493 (9th Cir.1985) and 28 U.S.C. 1471.

■ 6. An "attorney or other person who multiplies proceedings in a Bankruptcy Court can be made to personally satisfy the excess costs and attorneys' fees caused by their actions.

■ 7. The filing of the bankruptcy petition for East Coral, Inc. by defendants herein, case number SA 84–02431 RP, was an act done in bad faith and/or not in good faith.

8. Defendants throughout the pendency of this proceeding have been in repeated and willful violation of United States Bankruptcy Rule 9006(d) and local Bankruptcy Rule 904 governing the times for service, notice, filing, and contents of pleadings in this Court.

9. The debtor at no time had any entitlement to any interest in the Keswick Property and the transfer of that property to the debtor was done solely in violation of Federal Rule of Civil Procedure 11 as incorporated into the Bankruptcy Rules at 9011 and solely for the purpose of harassing and delaying plaintiffs in their right to foreclose.

■ 10. Mr. Temkin's liability herein is by reason of his having given carte blanche to his agent Steven Kelly. As a principal, Temkin is liable under the doctrine of *respondeat superior.*

■ 11. The Court has considered the availability of other remedies and finds them inadequate to stop the debtor's repeated practice of acquiring properties for the improper purpose of staying foreclosures, and the individual defendants' practice of assisting or transferring properties to debtors for that improper purpose and finds that those remedies are inadequate. The Court emphasizes that the purpose of Chapter 11 is to permit a debtor to reorganize and not to organize at the expense of secured creditors.

12. The transfer of the Yucatan Property in January of 1985 was done by the individual defendants there involved for a purpose of frustrating the rights of the secured creditors in the Yucatan property. That is further evidence that the defendants herein have been consciously and consistently misusing the bankruptcy courts to the detriment of others.

13. The foreclosure of the Keswick Property had no effect whatsoever on the issues which were preserved for trial, mainly the issues of sanctions for filing of bad faith bankruptcy solely to harass and cause unnecessary delay or a needless increase of plaintiffs' and others' cost of litigation.

14. The April 25, 1985, stipulation granting plaintiffs herein relief from stay was not a final resolution and was not intended to be a final resolution of the bad faith filing.

15. The actions of the defendants herein have been designed throughout the case to harass, delay and needlessly increase plaintiffs' costs, including defendants' failure promptly to meet the issues head-on, to admit their bad faith filings, and to attempt immediately to make plaintiffs whole, not necessarily by waiting for plaintiffs' credit bid.

16. Temkin's conduct in this situation is analagous to participation in a criminal conspiracy and any purported withdrawal by Temkin was insufficient to cut off his liability for all damages proximately caused.

17. In the event that any of the Findings of Fact hereinabove stated are deemed to be Conclusions of Law, the Court hereby adopts such Findings as Conclusions of Law and incorporates them herein as though set forth as Conclusions of Law.

IT IS SO ORDERED.