In re OAKGROVE VILLAGE, LTD., Debtor.

In re SISTERDALE, INC., a Texas Corporation, Debtor.

In re HUNTER'S CROSSING, INC., Debtor.

In re AUDUBON APARTMENTS, LTD., a Texas Limited Partnership, Debtor.

In re HAGUE–NEYLAND, LTD., Debtor.

Bankruptcy Nos. 87–50834 to 87–50838.

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

April 6, 1988.

Garvin P. Stryker and William Richard Davis, Jr. of Law Offices of Garvin Stryker, San Antonio, Tex., for debtors.

Erin Y. Baker of Baker & Botts, Dallas, Tex., for Federal Sav. and Loan Ins. Corp.

## MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

The five bankruptcy cases listed above were filed on April 6, 1987. All of these entities were owned or controlled by James Hague.

Sisterdale, Inc., was formed on the eve of bankruptcy. Its sole asset was the weekend home of James Hague; that asset was transferred to Sisterdale, Inc. on the eve of bankruptcy.

Hunter's Crossing, Inc., was formed on July 25, 1986. James Hague then transfer-

red an apartment complex from his name to that corporate entity and filed bankruptcy. That bankruptcy was dismissed when the apartment complex was reconveyed to Hague. Hunter's Crossing, Inc. remained a shell until April, 1987, when Hague conveyed raw land into the shell and filed bankruptcy for the entity.

James Hague transferred an apartment complex to Audubon Apartments Ltd. and filed bankruptcy immediately thereafter. At the time of the transfer, Audubon Apartments, Ltd., a purported limited partnership, was a shell entity; no actual certificate of limited partnership agreement had ever been filed with the Secretary of State of Texas.

Hague–Neyland, Ltd., is an actual limited partnership. It owned unimproved real property. It also filed bankruptcy in April, 1987. Oakgrove Village, Ltd., like Hague–Neyland, Ltd., is an actual, existing limited partnership. It also filed bankruptcy in April, 1987.

All of the real property owned by these entities had been posted for foreclosure; the foreclosures were scheduled for the first Tuesday in April, 1987. The property was posted by Mercury/Milan Savings Association, which held deeds of trust upon all of the real property. Mercury/Milan is now subject to a conservatorship and the real party in interest is actually the Federal Savings and Loan Insurance Corporation (hereinafter "FSLIC").

After the bankruptcies were filed, FSLIC engaged in extensive discovery; it took 2004 examinations; it had the property appraised; it filed motions for relief from stay. On the date of the hearings for relief from stay, the Debtors capitulated and assented to relief from stay.

FSLIC now seeks to recover sanctions under Rule 9011, Bankruptcy Rules for these filings. That motion will be denied, as set forth below.

## CONCLUSIONS OF LAW

The facts in these cases are not in dispute and all reflect that these cases were filed in "bad faith" as that term is used in *In re Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986) and subsequent opinions of this court, including *In re Fry Road Assoc's., Ltd.,* 66 B.R. 602 (B.Ct.W.D. Tex.1986 (Ayers, Chief Bankruptcy Judge); *In re Playa Development Co.,* 68 B.R. 549 (B.Ct.W.D.Tex.1986) (Kelly, Bankruptcy Judge); *In re Anderson Oaks, Ltd.,* 77 B.R. 108 (B.Ct.W.D.Tex.1987) (Clark, Bankruptcy Judge).

Three of these cases suffered from the "new debtor syndrome"—*i.e.,* the entity was created or the shell entity received the asset on the eve of bankruptcy. *See In re Victory Construction Co.,* 9 B.R. 549 (B.Ct.C.D.Ca.1981). All of the cases were filed on the eve of foreclosure. None of the entities was an operating entity—*i.e.,* none had employees, significant other debt, or equity in its assets.

All of these cases were, therefore, ripe for dismissal or, alternatively, granting relief from stay. *See Little Creek Dev. Co.,* 779 F.2d 1068 (5th Cir.1986).

At a hearing on this issue, Hague testified that he had been negotiating with FSLIC for a restructuring of the debts affecting these properties; that he had forwarded a written proposal to FSLIC; that he believed that his proposal might be accepted; that he was never told that the postings for foreclosure indicated a rejection of any "workout". Subsequent to bankruptcy, Hague attempted to pursue the workout, and even proposed plans of reorganization.

Further, the debtors' schedules reflected all of the "new debtor" transfers. Hague, when examined pursuant to Rule 2004, gave detailed explanations of his purposes, described or admitted the transactions, and set out his proposals. FSLIC refused to consider his proposals. Hague then allowed or consented to relief from the stay in order to avoid prolonged litigation.

The question before this Court, however, is whether sanctions should be imposed for utilization of the bankruptcy process. To impose sanctions under Rule 9011, (or Rule 11, F.R.Civ.P.) the Court must find that the bankruptcy schedules were themselves filed in "bad faith"; Rule 9011 allows sanc-

tions for pleadings filed for any improper purpose, such as "to harass, to cause delay, or to increase the cost of litigation ..."

To put the issue more simply, this Court must determine whether the bad faith described in *Little Creek* justifies Rule 9011 sanctions as well, or whether something more is required.

The answer is clear: *Little Creek* deals with cases that have little or no legitimate prospect for reorganization—either actual reorganization or chapter 11 liquidation. It encourages courts to grant relief from stay or to dismiss those cases. Judge Jones, in *Little Creek*, believed that such an approach is justified to prevent "abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *In re Little Creek Development Co.*, 779 F.2d at 1072. A finding of bad intent is not necessary, however:

> Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in [*In re*] *Winshall Settlor's Trust*, 758 F.2d [1136] at 1137 [ (6th Cir. 1985) ], aptly noted that
>
> [t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 922 (Bankr.N.D.Ill.1982) "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost is *raison d'etre....*" *In re Ironsides, Inc.*, 34 B.R. 337, 339 (Bankr.W.D.Ky.1983).
>
> Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions.

*Id.* at 1073.

■ The Court may, therefore, dismiss or grant relief from the stay upon a finding

of intent or upon a finding of no prospect for reorganization. *See e.g., In re Fry Road Assoc's., Ltd.*, 66 B.R. at 606–07.

Rule 9011, on the other hand, imposes sanctions only where there is bad intent. It does not impose sanctions for "terminal euphoria." *See generally In re Little Creek Development Co.*, 779 F.2d at 1073.

Rule 9011 practice is well understood in the Fifth Circuit. *Robinson v. National Cash Register Co.*, 808 F.2d 1119 (5th Cir. 1987) and *Thomas v. Capital Security Services, Inc.*, 812 F.2d 984 (5th Cir.1987) provide more than adequate guidance when dealing with motions under Rule 11 F.R. Civ.P., and are obviously binding upon cases under Rule 9011.

Rule 11, as amended in 1983, already imposes an objective standard for review of the complained of actions. Subjective "good faith" is not a defense. *Robinson v. National Cash Register Co.*, 808 F.2d at 1126–27. All pleadings must have a reasonable basis in law and fact. *Id.* at 1127.

Rule 11 is violated if a filing is frivolous. Rule 11 is violated if the filing is used "as a weapon for personal or economic harassment." *Id.* at 1130. Violation of either clause of Rule 11 is actionable. *Id.*

Finally, if a violation is found, sanctions must be imposed; the rule is mandatory. *Id.* Nevertheless, Rule 11 must not be used "to chill an attorney's enthusiasm or creativity"; the rule requires "conduct ... consistent with the proper functioning of the judicial system." *Id.* at 1131.

The subsequent opinion, *Thomas v. Capital Security Service Corp.*, 812 F.2d 984, the Fifth Circuit restated *Robinson* and added criteria for evaluating both the initial pleadings and subsequent conduct. It imposed the following affirmative duties upon an attorney signing a document, but those duties would apply to any party subject to Rule 11 sanctions. *Thomas* requires:

> (1) that the attorney has conducted a reasonable inquiry into the facts which support the document; (2) that the attorney has conducted a reasonable inquiry

into the law such that the document embodies existing legal principles or a good faith argument "for the extension, modification, or reversal of the existing law"; and (3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation.

*Id.* at 988.

In deciding whether a reasonable inquiry into the facts has been made the circumstances of the particular case will of course control, but the district court may consider such factors as how much time for investigation was available to the signer; how much did the attorney have to rely upon his client for the factual support for the document; was pre-filing investigation feasible; did the signing attorney accept the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues in question; and the need for discovery to develop the factual circumstances underlying the claim.

.... In deciding whether a reasonable inquiry into the law has been made a district court may consider how much time the attorney had to prepare the document whether the document contains a plausible view of the law; whether the document filed by an attorney or a pro se litigant and the complexity of the legal and factual issues in question....

*Id.* (citations and footnotes omitted).

Even if these standards are met not initially, sanctions may be imposed if the party or attorney does not modify the pleadings or dismiss the case when facts or other issues develop which make the original proceeding untenable. *Id.* at 988–89.

Applying *Robinson* and *Thomas* to these cases it is difficult to find that the original position, while weak, was objectively improper. The debtors sought protection of the Bankruptcy Court pending a determination of the status of a workout proposal pending before the creditor. When the creditor forced the issue, the debtor consented to relief from the stay.

■ In order to find for the creditor, FSLIC, it would be necessary to find that the person who signed the pleadings,

Hague, knew that FSLIC never had any intention of accepting any workout proposal; that Hague filed knowing that the filing had no purpose other than to harass FSLIC; and that Hague knew that the pleadings would clearly fall into the category of "bad faith" cases subject to dismissal, *etc.*

■ In reviewing the cases · cited by FSLIC, where sanctions under Rule 9011 have been imposed by bankruptcy courts · for "bad faith" filings, this Court has not found one case that involved an *initial* bad faith filing. Each case save one involves a *subsequent* bankruptcy following an earlier dismissal, or a confirmed plan. The movant, FSLIC, places great reliance on *In re French Gardens, Ltd.*, 58 B.R. 959 (B.Ct.S. D.Tex.1986). The *French Gardens* petition was filed by the "wrap-around" mortgage holder; the mortgage holder had just participated in a confirmed plan concerning the property and had consented to a plan providing for relief from stay if the original debtor failed to make certain payments to the first lien holder. FSLIC also rules upon *In re East Coral, Inc.*, 54 B.R. 1009 (B.Ct.C.D.Cal.1985). *East Coral* involved the third bankruptcy petition within two years filed by the same entity, the same lawyer and involving the same property.

*In re Trust Deed Center, Inc.*, 36 B.R. 846 (B.Ct.C.D.Cal.1984) involved the third attempt to stay foreclosure; *In re Bayport Securities Corp.*, 36 B.R. 575 (B.Ct.C.D. Cal.1983) involved subsequent petitions following dismissal of the original petition; so did *In re Eck*, 34 B.R. 11 (B.Ct.M.D.Fla. 1983); *In re Johnson*, 24 B.R. 832 (B.Ct.E. D.Pa.1982); and *In re Bystrek*, 17 B.R. 894 (B.Ct.E.D.Pa.1982).

*In re Eighty South Lake, Inc.*, 63 B.R. 501, 502 (B.Ct.D.C.Cal.1986) is distinguishable only in that the bankruptcy petition was filed "as part of a bad faith scheme to divest two separately appointed state court receivers...."

The facts in this case do not support more than a finding that the petitions (and incident transfers) were filed to prevent foreclosure. Not one of these petitions

involved a subsequent proceeding concerning the same property. This, coupled with the unrebutted testimony of the principal of the debtors, Mr. Hague, that he had some hope of arranging for a workout or reorganization, leads to the conclusions that Rule 9011 sanctions are not warranted.

To hold otherwise might well chill the use of bankruptcy where foreclosure is emminent. After all, one of the purposes of bankruptcy—and particularly of Chapter 11—is to provide a "breathing space" for troubled entities so that negotiations can begin with creditors. *See e.g., In re Little Creek Development Co.,* 779 F.2d at 1071. To impose sanctions for *mere* "bad faith" filing, without more, would be improper.

■ Does this mean that most debtors are entitled to "one bite out of the apple"? Almost certainly, except where, pre-petition, there has been a multitude of state court proceedings, *i.e.,* receiverships, temporary restraining orders or the like. Alternatively, the Court might consider imposing sanctions where a "work-out" agreement had been entered into and then violated by the debtor or some similar situation where the debtor can be said to objectively know that the petition is filed merely to delay the inevitable.

■ Also, in situations in which the petition is filed, but the debtor thereafter fails to file schedules, attend a meeting under 11 U.S.C. § 341, refuses to consent to examination under Rule 2004, or the like, sanctions might well be imposed under Rule 9011 where the original petition was also in "bad faith" under *In re Little Creek Development Co.,* 779 F.2d at 1073.

Or, alternatively, had the debtors not consented to relief from the stay, bowing to the inevitable, sanctions under Rule 9011 might have been proper for continuing the case. *See Thomas v. Capital Security Service, Inc.,* 812 F.2d at 988–89.

■ As an aside, even though the creation of a new debtor and the pre-petition transfer of assets into such an entity is a clear indicia of "bad faith" under *Little Creek Development Co.,* 779 F.2d at 1073, it does not follow that the "new debtor" transaction is within Rule 9011. Here, the transfer did not affect the legal rights of the creditor, FSLIC; all the transfer did was allow Hague to avoid filing personally. Hague's unrebutted testimony was that a personal filing would have placed in jeopardy other assets which were either not in difficulty or which were subject to on-going workout agreements or negotiations. Therefore, no objective bad faith under Rule 9011 would appear to be present.

Finally, there is also the question of "good faith" of the FSLIC in seeking sanctions. FSLIC has sought sanctions for costs incurred in discovery matters revealed on the debtors' schedules. Expenses of $40,000.00 are alleged which the Court finds extremely excessive given the disclosure in the schedules and the cooperativeness of Mr. Hague.[1]

The Court must, however, separately address the problem posed by the filing for Audubon Apartments, Ltd. As noted above, this entity is not a "true" limited partnership because no certificate of limited partnership was ever filed with the Secretary of State. *See* Tex.Rev.Civ.Stat.Ann. Art. 6132a–1 § 2.04 (1987) (not applicable to this case, since the entity was formed prior to September 7, 1987) and Tex.Rev.Civ. Stat.Ann. art. 6132a § 3(a)(2). This is the only alleged defect; all other steps necessary to create the partnership had been taken.

■ However, mere failure to file the certificate does not mean that an entity has not been created. A limited partnership exists when all steps are taken or where there has been "substantial compliance in good faith with the statute. *Id.* at Art. 6132a § 3(b). A general partnership is not

---

1. On top of everything else, FSLIC was late in filing its brief in this matter. Mr. Hague's counsel moved to strike. Counsel for FSLIC, a member of a firm with over 300 lawyers, responded citing an emergency in another case. No mo-

tion for extension was filed. While the Court declined to strike the brief, the Court would note that Debtor's counsel, a member of a two lawyer firm, got his brief in on time.

created as to third parties unless there is some compelling reason to hold otherwise. *See Garrett v. Koepke*, 569 S.W.2d 568, 570–71 (Tex.Civ.App. Dallas 1978 writ ref'd, n.r.e.) The purpose of recordation is merely to provide notice. Where all parties were aware of the limited nature of the partnership, the defect in notice—recordation—is immaterial. *Id.; see also Laney v. Commissioner*, 674 F.2d 342, 348 (5th Cir.1982).

Therefore, Audubon Apartments was and remains a limited partnership, contrary to the assertions of FSLIC.

FSLIC also would have the Court impose sanctions because Mr. Hague filed for a "limited" partnership when an investigation would have revealed the falsity of his assertion. Since the assertion was true, sanctions will not lie. The Court does not need to reach the issue of Mr. Hague's "good faith" reliance on prior counsel (Hague seems to have been told by prior counsel that all steps necessary to create a limited partnership had been taken).

An order consistent with this opinion will be entered.