**In re Carolyn A. WATERS, Debtor.**

**NORWEST MORTGAGE, INC., Plaintiff,**

v.

**Carolyn A. WATERS, Defendant.**

**Bankruptcy No. 86–00497.**

United States Bankruptcy Court, E.D. Wisconsin.

May 7, 1986.

Richard E. Ceman, Jr., Milwaukee, Wis., for Norwest.

Clifton G. Owens, Milwaukee, Wis., for debtor.

## DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

Norwest Mortgage, Inc. (Norwest) asserts that this chapter 13 case was filed in bad faith, and asks the court to hold the debtor and/or the debtor's attorney liable for reasonable costs and attorney fees.

Hearing on the motion was held on February 25, 1986, Norwest appearing by Attorney Richard E. Ceman, Jr. and the debtor appearing by Attorney Clifton G. Owens. The record presented at that hearing consisted of statements by each of the attorneys, testimony by Lori Schultz, a legal secretary with Ceman's law firm, and Paul Lang, a messenger employed by that firm, and in addition, the court took judicial notice of its own records concerning this debtor. The following facts appeared:

The debtor, then represented by a different attorney, had filed a previous chapter 13 petition on May 30, 1985 (No. 85–02024). On June 17, 1985, in accordance with the debtor's plan, an order was sent to the debtor's employer, directing that $64 a week be deducted from her earnings and sent to the trustee. On June 21, 1985, Norwest filed a $7,677.35 claim consisting of $5,162.14 for unpaid monthly mortgage payments for the period from September, 1984 through May, 1985, costs and attorney fees of $1,303.00, and $1,212.21 for interest on the claim until paid through the plan. The claim, attached to which were copies of a July 9, 1984 note and mortgage in the amount of $38,000, recited that Norwest had obtained a mortgage foreclosure judgment on April 8, 1985 in the Milwaukee County Circuit Court.

A § 341 hearing scheduled for July 23, 1985 was adjourned to August 13, 1985 when the debtor failed to appear. Court minutes for the latter hearing indicate that post-petition payments had not been made on Norwest's mortgage and the trustee had not received any payments as provided in the June 17, 1985 order. The trustee recommended that the debtor's plan be confirmed but that confirmation be withheld pending receipt of funds. On September 5, 1985, Norwest filed a motion for relief from the automatic stay of § 362(a) of the Bankruptcy Code.

Hearing on Norwest's motion was held on September 24, 1985. The debtor's failure to make post-petition mortgage payments or payments to the trustee was explained in the court minutes by the fact that the debtor had been off from work for an extended period of time due to illness, and that her employer had questioned the debtor's claim for sick pay and had refused to pay it. The trustee reported that as yet no money had been received, and therefore no order had been entered confirming the plan.[1] He indicated that he was recommending confirmation of a four year plan with payments of $86 a week.

Statements by Norwest's attorney revealed that the first payment on the July 9, 1984 mortgage was due on September 1, 1984, that Norwest had not received a single payment since the loan had been made, that Norwest's total claim was now $45,-072.45, and that according to the real estate tax assessor, the fair market value of the property was $35,000.00. He pointed out that Norwest's claim exceeded this latter figure by over $10,000. As Norwest was without adequate protection (§ 362(d)(1)), the court ordered the stay lifted.

---

1. On October 3, 1985, with money coming in, the trustee's office requested the clerk's office to send through an order of confirmation, and a confirmation order, back dated to August 13, 1985, was then entered. It is unclear why the order was back dated in this manner.

A written order lifting the stay was entered on September 30, 1985. On January 9, 1986, the debtor filed a motion to reimpose the stay, and noticed it for hearing on January 28, 1986. The motion recited that the debtor was able to increase her chapter 13 payments "based on a resumption of working hours and based upon the absence of any chemical dependency at the present time," that the debtor had been seeing a counselor, and that the "problem with the original non-payment of the mortgage was the chemical dependency."

At the January 28, 1986 hearing, debtor stated that she was back at work and had increased income, and she asked that the stay be reimposed. Norwest's attorney reported, however, that in the interim, Norwest had continued its foreclosure action, that a sheriff's sale had been held on January 6, 1986, and that the sale had been confirmed by order of the circuit court on January 20, 1986. The court then informed the debtor that under Wisconsin law, by reason of the circuit court order confirming the sheriff's sale, the debtor no longer had any interest in the property, and the bankruptcy court had no power to reinstate the Norwest mortgage. *In re Lynch,* 12 B.R. 533 (Bk. WD WI 1981). Debtor's request for reinstatement of the stay was accordingly refused. On January 31, 1986, Attorney Owens entered his appearance on behalf of the debtor. On his motion, the case was converted to a case under chapter 7, and payments to the chapter 13 trustee were suspended.

On February 14, 1986, Attorney Ceman appeared before the court on behalf of Norwest with an ex parte motion for relief from the automatic stay, and a motion for costs and attorney's fees for bad faith filing. He advised the court that a new chapter 13 case had been filed by the debtor, and set out the following sequence of events in a supporting affidavit.

Owens phoned Ceman on January 31, 1986 with the information that he now represented the debtor, and that the debtor was converting her chapter 13 case to chapter 7, and he asked that the debtor be allowed to remain in the property for 30 days. Owens was told that the debtor could remain in the property for 30 days if she would pay the sum of $544.25 (the amount of one monthly mortgage payment) in consideration for the 30 day extension. On February 6, 1986, Ceman had various telephone conversations with Owens. Owens stated that the debtor would tender the $544.25 at the end of the 30 day extension, but was told this proposal was not acceptable. As stated in Ceman's brief, "Mr. Owens was informed that this arrangement was unacceptable to Norwest Mortgage, Inc. because of the glaring unforeseeability of being able to collect the money from the debtor *after* she had received her benefit."

Thereafter, Norwest had a writ of assistance delivered to the Sheriff of Milwaukee County in order to remove the debtor from the property. On February 12, Owens informed Ceman that the debtor had filed a second chapter 13 bankruptcy on February 11, 1986 and that Norwest had been named as a creditor.[2] Ceman responded by filing

---

2. This case (No. 86–00497) was commenced on February 11, 1986 when Attorney Owens filed a chapter 13 petition and a "Summary Information Sheet" on behalf of the debtor. No plan was filed, nor, as required by B.R. 1007, were a list of creditors or a Chapter 13 Statement filed. The summary sheet indicated there was only one creditor, presumably Norwest.

On March 18, 1986, a chapter 13 statement and plan of arrangement were filed. The plan proposes that the debtor pay the trustee $25 per week via a wage assignment, and that all creditors receive 100%. Norwest for $571 and Owens for $580 are the only creditors listed. Whether they were in fact the debtor's only creditors was problematical, since no discharge

had as yet been entered in the debtor's pending chapter 7 case.

The figure of $571 probably represents the sum of $544.25 plus interest until paid under the plan. Owens' listing of Norwest as a creditor is in conformity with his position that there was an agreement for a one month tenancy, and the interest add-on assumes that Norwest is secured. In fact, it has no security. The debtor moved out of the premises on February 18, 1986.

The attorney's fee statement filed with the chapter 13 statement pursuant to B.R. 2016(b) indicates that $80 was paid to Owens for attorney fees but, contrary to B.R. 1006(b)(3), the

his motions for relief from stay and for costs and attorney fees.

The court indicated it thought the motion for relief from stay was moot, that in fact there was no stay in existence since neither the bankruptcy estate nor the debtor had any interest in the property, and that the debtor's *de facto* possession did not qualify her for the protection of the § 362 stay. *In re Kennedy,* 39 B.R. 995 (C.D. CA 1984). However, as a practical matter (because of the filing of the chapter 13 petition), Norwest needed an order to persuade the Sheriff to act, and § 362(a)(1) could arguably apply to the debtor's *de facto* possession. See *In re Mimi's of Atlanta, Inc.,* 5 B.R. 623 (Bk.ND GA 1980); aff'd 11 B.R. 710. Under the circumstances, rather than concern itself with the question of whether or not Norwest was in fact stayed by the filing of the chapter 13 petition, the court signed an order lifting the stay. Norwest's motion for costs and attorney fees was noticed for hearing on February 24, 1986.

At the February 24 hearing, Attorney Owens conceded that the debtor no longer had an ownership interest in the property, but he contended that the debtor had an agreement for a tenancy for one month, and that the plan he intended to propose in the chapter 13 case would provide for the payment of $544.25 for that one month tenancy. The court then scheduled an evidentiary hearing on Norwest's motion for February 25, 1986, and granted an oral motion by Owens to extend the time to appeal from the ex parte order vacating stay.

The facts as brought out at the February 25 hearing did not differ materially from those set out in Ceman's February 14 brief and affidavit. Owens was aware on January 31 that a writ of assistance had been issued by the state court when he called Ceman and asked for the 30 day extension. Ceman contacted his client and called Owens back stating that the debtor could remain in possession provided she paid the sum of $544.25. He added that Norwest needed a response by February 5. On February 4, Ceman wrote Owens a letter confirming that discussion. On February 6, Owens called back and said that the debtor was willing to pay the $544.25 in order to stay in the property, but that she would pay it at the end of the month. On the same day, February 6, Ceman, after checking with his client, called Owens back, stated that his proposal to pay the $544.25 at the end of the month was not acceptable, and instructed Laurie Schultz to have the writ of assistance delivered to the Sheriff. On February 11, 1986, Lang delivered the writ to the Sheriff and Owens filed the chapter 13 petition. On February 12, Owens notified Ceman that he had filed the chapter 13 petition the day before, naming Norwest as a creditor for the one month's rent.

Owens contends that a tenancy at will or periodic tenancy was created for the debtor,[3] for which she owed Norwest one month's rent. He argues that the court should not find that the chapter 13 petition was filed in bad faith because it was filed

---

$60 filing fee was not paid. To date, it has not been paid.

On February 27, 1986, an order was issued to debtor's employer, Universal Foods Corp., to deduct $25 a week from the debtor's earnings and pay it over to the trustee. The trustee's office received one check for $25 on March 25, 1986. However, it bore the old case number, and since that case had been converted to a case under chapter 7, the check was returned. The trustee's staff was not aware the check was intended for a newer case. Apart from that one check which was returned, the trustee has received no other payments.

**3.** Wis.Stats. § 704.01(4): "Periodic tenant" means a tenant who holds possession without a valid lease and pays rent on a periodic basis. It includes a tenant from day-to-day, week-to-week, month-to-month, year-to-year or other recurring interval of time, the period being determined by the intent of the parties under the circumstances, with the interval between rent-paying dates normally evidencing that intent.

Wis.Stats. § 704.01(5): "Tenant at will" means any tenant holding with the permission of his landlord without a valid lease and under circumstances not involving periodic payment of rent; but a person holding possession of real property under a contract of purchase or an employment contract is not a tenant under this chapter.

to provide for the payment of the one month's rent to Norwest.

The facts do not support his position. There never was any agreement between the parties which would permit the debtor to remain in possession since she never agreed to Norwest's offer. Norwest's offer was to the effect that she could have the use of the premises for an additional month provided she paid Norwest the sum of $544.25 *in advance.* She was unwilling or unable to make such advance payment.

Owens contends that the debtor was in possession, had possessory rights, and that she retained those rights until the Sheriff might dispossess her by executing the writ of assistance. In effect, it is his argument that because the debtor was in possession, she had a right to possession. This begs the question. It may be debated as to whether or not, because of her possession of the property, a stay took effect when she filed the chapter 13 petition, but that has no bearing on whether or not she had the *right* to possession. She had no such right.

Under the Wisconsin statutory definition, a "tenant at will" means a tenant holding possession with the permission of the landlord. She had no such permission. The definition of a "periodic tenant" refers to the "intent of the parties." Whatever her intent may have been, Norwest's intent, understandable in view of the long history of no payments whatsoever, was that she could not stay unless she paid in advance.

Section 704.03(5) of the Wisconsin Statutes states, "In any case where a lease or agreement is not in writing signed by both parties but is enforceable under this section, the lease or agreement must be proved by clear and convincing evidence." In this case, rather than evincing an agreement between the parties by clear and convincing evidence, the evidence is clearly and convincingly the exact opposite. There never was any agreement.

Norwest contends that the chapter 13 petition was not filed in good faith for the purpose of paying a pre-petition debt that the debtor owed to Norwest, but rather for the purpose of obstructing Norwest from exercising its legal rights to obtain possession of the property. Citing B.R. 9011 and 28 U.S.C. § 1927,[4] Norwest asks that the debtor's attorney be ordered to personally satisfy the reasonable costs and attorney's fees incurred by Norwest. In his affidavit opposing Norwest's motion, Owens concedes that "the Chapter 13 petition was filed solely to enable the debtor to remain in the property for the month of March" but contends that it "was not filed in bad faith."

■ 28 U.S.C. § 1927 provides that a court may order an attorney who "multiplies the proceedings ... unreasonably and vexatiously" to bear the adversary's costs and attorneys' fees personally. B.R. 9011 requires that a lawyer limit litigation to contentions that are "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." As with recently amended Rule 11 of the Federal Rules of Civil Procedure[5] from

---

4. Rule 9011 "... The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, *shall* impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee." (emphasis added)

"§ 1927. Counsel's liability for excessive costs. Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

5. "Rule 11 was amended in 1983 to make it easier for a court to award fees, indeed perhaps to make the award mandatory in some

which it derives, B.R. 9011 applies an objective standard. The imposition of sanctions under B.R. 9011 does not require a finding of subjective bad faith on the part of a signing attorney.

Recently, the court of appeals for this circuit had occasion to discuss and apply the provisions of Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. *In re TCI Limited,* 769 F.2d 441 (7th Cir.1985). The court said: (p 445) "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law.... A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care."

The court said further: (p. 450) "Unless attorneys learn from experience, § 1927 will not achieve its purpose. The bar of this circuit must be aware that the courts will enforce § 1927 and Rule 11. Litigation must be grounded in an objectively reasonable view of the facts and the law. If it is not, the lawyer who proceeds recklessly—not his innocent adversaries—must foot the bill."

■ Mr. Owens has been well known to this court for many years as an able and imaginative attorney—one of the very best and most competent to practice in this court. The court will vouch for his integrity as well. As was true in this case, for the most part his clients are poor. They are usually from the lowest economic level in our society, in need of all the help they can get by way of legal services, and he serves them well. In this case, not unusual in his practice, he had a client with a serious problem who called on him for help, and he did his utmost to help her. In so doing, he overreached. Owens contends

that he acted in good faith, and if it were a subjective test to be applied, the court would rule in his favor. But as is emphasized in *TCI LIMITED,* it is no longer a subjective test. See also *Thornton v. Wahl,* 787 F.2d 1151 (7th Cir.1986). Viewing it objectively, as the court must, the court finds that his conduct in filing the chapter 13 petition was unreasonable and vexatious and that Norwest is entitled to recover its reasonable costs and attorneys' fees from him.

As a consequence of the filing of the chapter 13 petition, Norwest's attorney has prepared and filed an *ex parte* motion with attached brief and affidavit and participated in a brief *ex parte* hearing on February 14, 1986, a second brief hearing on February 24, 1986 at which Attorney Owens also appeared, and a third and somewhat longer evidentiary hearing on February 25, 1986. In addition, a responsive brief to a brief submitted by Owens has been filed. For these efforts, and having in mind the various standards and criteria set out in such cases as *Bonner v. Coughlin,* 657 F.2d 931 (7th Cir.1981) and *In re U.S. Golf Corp.,* 639 F.2d 1197 (5th Cir. 1981), the court finds and determines reasonable attorney fees to be in the sum of $500, which sum will be assessed personally against Clifton G. Owens.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

cases.... We have warned the bar of the risks; ... Lawyers who litigate carelessly now must take the consequences." *In re TCI Limited,* 769 F.2d 441 at 446.