In re CEDAR FALLS HOTEL PROPER-
TIES LIMITED PARTNERSHIP,
a California Partnership, Debtor.

**Bankruptcy No. L88–01146W.**

United States Bankruptcy Court,
N.D. Iowa.

June 8, 1989.

Charles Hinton and Stuart Hoover, Waterloo, Iowa, Guy Booth, Cedar Rapids, Iowa, for debtor.

John Hubbard and Richard Anderl, Omaha, Neb., for Sabino Investing, Inc.

## MEMORANDUM AND ORDER Re: Motions for Sanctions

MICHAEL J. MELLOY, Chief Judge.

The matters before the Court are a Motion for Sanctions filed by Sabino Investing, Inc. against the Debtor, Horst Osterkamp, and the Debtor's attorneys; and Debtor's Motion for Sanctions against Sabino Investing, Inc., and its attorneys.

The following Memorandum and Order constitutes Findings of Fact, Conclusions of Law and Order as required by Fed.R. Bankr.P. 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### BACKGROUND

The majority of the facts underlying this case are more fully set forth in a previous order issued by this Court. *See Memorandum and Order Re: Motion for Relief from Stay and Change of Venue*, Chp. 11 Bankr. No. L88–01146W, Cont. No's. 80416

& 80467 (Bankr.N.D. Iowa November 23, 1988) (hereinafter "Order Granting Relief from Stay"). For purposes of this order the Court will summarize the facts pertinent to the Motions for Sanctions.

Cedar Falls Hotel Properties is a California limited partnership. This partnership owned the Cedar Falls Holiday Inn in the early 1980's. In 1983, the property was transferred from Cedar Falls Hotel Properties to an entity called U.S. Hotel Properties Partnership I (U.S. Hotel Properties). After transferring the property to U.S. Hotel Properties, this Cedar Falls Hotel Properties Partnership became inactive. A new Cedar Falls Hotel Properties Limited Partnership (the Debtor herein) was created by the filing in California of a new certificate of limited partnership on May 24, 1988. The Debtor acquired title to the Cedar Falls Holiday Inn by a "quit-claim deed" dated May 13, 1988, from U.S. Hotel Properties. The deed was publicly recorded in Blackhawk County, Iowa, on June 17, 1988. The Cedar Falls Holiday Inn was the Debtor's only asset. The Debtor filed a Chapter 11 petition on July 27, 1988.

The general partners of the Debtor include Horst Osterkamp, U.S. Hotel Properties Corporation, and Cedar Falls Hotel Properties Corporation, all of which are California residents or corporations. Cedar Falls Hotel Properties Corporation was incorporated on April 25, 1988, and according to its Articles of Incorporation, is controlled by Horst Osterkamp. This corporation has no assets. U.S. Hotel Properties Corporation is also a corporation controlled by Horst Osterkamp and functions primarily as a managing agent for various hotels.

U.S. Hotel Properties owned a number of hotels and motels located at various sites across the United States. Sabino Investing, Inc. (Sabino) is a creditor of U.S. Hotel Properties and has liens against a number of the hotels and motels owned by U.S. Hotel Properties, including the Cedar Falls Holiday Inn. At or about the same time U.S. Hotel Properties transferred the Cedar Falls Holiday Inn to Cedar Falls Hotel Properties, Limited Partnership, a number of similar transactions were made by U.S. Hotel Properties in which individual motels were transferred to newly created limited partnerships. Each of those limited partnerships owned only the single newly acquired motel property. Each then filed their own Chapter 11 proceeding in various locations around the country. Horst Osterkamp testified at one of the hearings in this case that he was attempting to avoid having to take U.S. Hotel Properties into a Chapter 11 proceedings. This goal was not realized, however, as Chapter 11 bankruptcy was eventually filed for U.S. Hotel Properties in Los Angeles, California.

A number of liens encumbered the Cedar Falls Holiday Inn which greatly exceeded the fair market value of the property. The senior lien was held by Mid–America Savings Bank (Mid–America) which had a contract balance with accrued interest to October 4, 1988, of over one million dollars. The second lien holder was Midland Financial Savings and Loan Association (Midland Financial). The balance owed on the Midland Financial mortgage with accrued interest as of October 4, 1988, was over two million dollars. As of October 4, 1988, the delinquency on the indebtedness owed to the first and second lien holders was approximately $500,000. The third lien was held by Sabino Investing, Inc. The unpaid balance on the Sabino mortgage as of October 4, 1988, was over four million dollars. State and federal tax liens have been filed against U.S. Hotel Properties. Although these liens exceed $1,000,000.00, testimony indicated that approximately $100,000.00 of it was attributable to the Cedar Falls Holiday Inn. Merrill Lynch Private Capital, Inc., holds a mortgage which secures a promissory note in the amount of $10,000,-000.00 Horst Osterkamp alleged that the Merrill Lynch mortgage could easily be released upon his request to Merrill Lynch, because that mortgage also encumbered other hotel properties owned by U.S. Hotel Properties.

Horst Osterkamp testified that the value of the Cedar Falls Holiday Inn exceeded $7,000,000.00. If this were the case, then each of the first three lien holders, Mid–America, Midland Financial and Sabino, would have been fully secured lien holders

in the property. The Court found, however, that the actual fair market value of the property was approximately $3,400,-000.00, based on independent appraisal testimony. The result of that finding was that Mid–America and Midland Financial were found to be fully secured in the property, but Sabino was found to be almost completely unsecured.

Sabino had commenced a state court foreclosure action against the Debtor and the senior mortgagees. On July 5, 1988, Midland Financial's Motion for Summary Judgment was granted and a Decree of Foreclosure was entered in its favor. Additionally, the state court appointed a receiver to operate the Cedar Falls Holiday Inn. At no time during the state court proceedings were any of the major creditors, including Mid–America, Midland Financial and Sabino, or the state court, informed of the fact that U.S. Hotel Properties had transferred ownership of the Cedar Falls Holiday Inn to the Cedar Falls Hotel Properties Limited Partnership. The state court appointed a receiver and a Decree of Foreclosure was entered against the Cedar Falls Holiday Inn in the name of U.S. Hotel Properties, even though U.S. Hotel Properties was no longer the owner of record of the Cedar Falls Holiday Inn. The major creditors were not aware of the transfer until the Debtor, Cedar Falls Hotel Properties, Limited Partnership, filed bankruptcy on July 27, 1988.

Midland Financial and Sabino filed Motions for Relief from Stay. Based upon the above facts, the Court granted the motions on two alternative grounds. First, the Court found that the case was filed in bad faith, which constituted "cause" for lifting the stay. In making its determination that the case was filed in bad faith, the Court noted the following facts as particularly important: The case was a one asset case, the Debtor had no equity in the property, there was a relatively small unsecured debt, bankruptcy was filed only after a

judgment of foreclosure was entered and a state receiver appointed, and the Debtor suffered from the "new debtor" syndrome. Second, the Court lifted the stay because the Debtor had no equity in the property and the property was not necessary for an effective reorganization. The Court found that there was no realistic possibility of a successful reorganization. The Court specifically stated: "This case was not filed with the legitimate intent of reorganizing Debtor's business, but rather for the purpose of frustrating and delaying the legitimate rights of creditors to proceed to foreclose and realize upon their security." Order Granting Relief from Stay, slip op. at 14.

The Order Granting Relief from Stay was appealed by the Debtor. The Debtor did not post the necessary bond to obtain a stay pending appeal and as a result, the creditors were allowed to schedule and conduct a sheriff's sale. Midland Financial bid the amount of its debt against the property. Sabino apparently did not bid or at any rate failed to purchase the property. Sabino has not redeemed the property. Because the property was sold, the appeal of the Order Granting Relief from Stay was rendered moot, and the parties voluntarily dismissed the appeal in the District Court.

Based on the Court's finding that the Debtor's case was filed in bad faith, Sabino has now moved, pursuant to Bankr. Rule 9011(a), for sanctions against the Debtor, Horst Osterkamp, and the Debtor's attorneys,[1] in the form of reasonable expenses incurred as a result of the filing of the case, including attorney fees.

The Debtor has retaliated by moving for sanctions against Sabino and its attorneys,[2] claiming that the Motion for Sanctions against the Debtor, et al., was filed to "harass, delay, or increase the cost of litigation" which has "no valid purpose other than to harass [Debtor's attorneys], the

---

**1.** Throughout this opinion, "Debtor's attorneys" refers to the law firm of Hinton, Zager & Hoover, which represented the Debtor throughout the substantive course of the case. Hinton, Zager & Hoover have withdrawn as counsel for the Debtor. The Debtor was represented at the hearing on the Motion for Sanctions by another firm.

**2.** Kutak, Rock & Campbell of Omaha, Nebraska.

debtor, and the general partners of the debtor." Combined Resistance to Motion for Sanctions, Motion to Dismiss, and Debtor's Motion for Sanctions, p.3.

The primary concern of the major creditors upon the Debtor's filing of bankruptcy was that pursuant to 11 U.S.C. § 543(b)(1), the state court receiver would be ousted from its receivership and the old management, including Horst Osterkamp, would be reinstated as the Debtor in Possession pursuant to that section. The major creditors feared that if the old management were reinstated, then income from the Cedar Falls Holiday Inn might be transferred to California and not used to pay the Debtor's creditors. On August 15, the Court granted the Motion to Excuse Compliance with § 543 on an interim basis, thus keeping the state court receiver in place. A full evidentiary hearing was held on the matter shortly thereafter, at which time the Debtor continued to fiercely contest the Motion to Excuse Compliance with § 543.

The hearing on the Motion to Excuse Compliance with § 543 and the final hearing on the Motions for Relief From Stay were consolidated. The Debtor continued to resist the Motion to Excuse Compliance with § 543 during the final consolidated hearing until the time that Horst Osterkamp was to take the stand. Immediately before Mr. Osterkamp was to take the stand, the Debtor withdrew its resistance to the Motion to Excuse Compliance with § 543 and consented to leaving the state court receiver in place to operate the Cedar Falls Holiday Inn. The Debtor had given no indication that it would consent to this relief prior to the hearing, so all parties were forced to be fully prepared to go forward on that issue.

At the hearing held on the Motions for Sanctions on March 13, 1989, attorneys for Sabino submitted into evidence copies of billing statements for fees and expenses billed to their client for services and expenses rendered on behalf of Sabino [3] from July 14, 1988 to December 30, 1988. In that time period, Sabino was billed $127,598.75 for attorney's fees and $25,898.82 for expenses, for a total of $153,497.57. The Court was advised at that hearing that Sabino only seeks attorney fees and expenses in the amount of approximately $105,000.00 because not all of the $153,497.57 was related to the bankruptcy proceedings. Sabino has subsequently advised the Court that it is not necessarily asking that sanctions in the amount of $105,000 be imposed against the Debtor and its attorneys; rather, that the evidence adduced at the hearing on sanctions was adduced to "substantiate the magnitude of those costs and expenses" Sabino incurred in the case. Sabino's Post Trial Brief, p.4. The Court notes that counsel for Debtor billed their client $22,891.50 for attorney's fees and $1,449.00 for expenses, for a total of $24,340.50 for representation throughout approximately the same time period.

## DISCUSSION

Sabino's position is that because the Court granted the Motion to Lift Stay partially on the grounds of bad faith, sanctions should necessarily follow from that decision. Debtor and Debtor's attorney's position is that they made a reasonable inquiry into the facts and into the law before they filed the case and that they therefore did not have the subjective bad faith required to impose sanctions on them. Sabino has moved for sanctions pursuant to Bankr. Rule 9011. That rule provides in part:

> Every *petition,* pleading, motion and other paper served or filed in a case ... shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated.... *The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith*

---

**3.** The bills were to Tucson Electric Power Co. Tucson Electric Power Co. is the parent corporation of Tucson Resources. Sabino Investing, Inc. is a wholly owned subsidiary of Tucson Resources. The Court regards Sabino as the client for purposes of this decision.

*argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court* on motion or on its own initiative, *shall impose* on the person who signed it, the represented party, or both, *an appropriate sanction,* which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Bankruptcy Rule 9011(a) (emphasis added). Bankruptcy Rule 9011 is based on Fed.R. Civ.P. 11 and law interpreting Rule 11 is applicable to interpretations of Bankr.Rule 9011. *Featherston v. Goldman (In re D.C. Sullivan Co., Inc.),* 843 F.2d 596, 598 (1st Cir.1988). Bankr.Rule 9011 describes two types of sanctionable conduct: One, "[w]here the papers are frivolous, legally unreasonable or without factual foundation", and two, "where the pleading is filed for an improper purpose." *Mazzocco v. Smith (In re Smith),* 82 B.R. 113, 114 (Bankr.D.Ariz.1988) (Citing *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1537–38 (9th Cir.1986)); *see also Needler v. Quiniff (In re Grantham Bros.),* 84 B.R. 172, 174 (D.Ariz.1988) ("The two problems Rule 11 addresses are 'frivolous filings' and the use of judicial procedures for harassment.").

In 1983, Rule 11 was amended to encourage courts to find and impose sanctions on attorneys to curb perceived abuses of judicial processes. The standard under which signers of documents were to be judged was changed from a subjective standard to an objective standard to achieve this goal. *See Golden Eagle Distribution Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536–38 (9th Cir.1986); *In re TCI Ltd.,* 769 F.2d 441, 446–47 (7th Cir.1985); *Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985), *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

Courts have held that even if a document conformed to the dictates of Rule 11 when initially filed, if the signator of the document becomes aware of a change in circumstances which would render the document in violation of Rule 11, then the signator has an obligation to inform the court of that fact. *See Robinson v. Nat'l Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir.1987); *but see Oliveri v. Thompson,* 803 F.2d 1265, 1274–75 (2d Cir.1986) (Rule 11 does not impose a continuing obligation on the signator), *cert. denied, County of Suffolk v. Graseck,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Additionally, courts have expanded the reach of Rule 11 to encompass sanctions against an attorney even when no particular document is pointed to which was in violation of Rule 11, but where the entire course of litigation seemed to have behind it the subjective intent to harass, or the court found the entire litigation to be frivolous. *See Lupo v. R. Rowland and Co.,* 857 F.2d 482, 485–86 (8th Cir.1988) (Affirming district court's imposition of sanctions without specifying which signed papers violated Rule 11), *cert. denied,* —— U.S. ——, 109 S.Ct. 2101, 104 L.Ed.2d 662 (1989).

Bankruptcy Rule 9011 expressly includes a signed petition in its roster of documents to which the rule applies. Sabino contends that the filing of the petition, which was signed by Horst Osterkamp and Charles Hinton, Debtor's attorney, is sanctionable under either type of conduct proscribed by Bankr. Rule 9011, either as a frivolous filing or filed for an improper purpose.

■ The burden of proof is on Sabino to prove that sanctions are warranted. *See Rich Art Sign Co., Inc. v. Ring,* 122 F.R.D. 472, 474 (E.D.Pa.1988), *aff'd without published opinion,* 875 F.2d 311 (3rd Cir.1989).

## FRIVOLOUS FILING

■ The frivolous filing prong of Bankr. Rule 9011 seeks to deter filings that are not well grounded in fact or warranted by existing law or good faith argument for the extension, modification, or reversal of existing law. The Court is to determine whether the signator made a reasonable inquiry into the facts and the law to con-

clude that the filing of the petition was meritorious. *See In re Eighty South Lake, Inc.,* 63 B.R. 501, 507 (Bankr.C.D. Cal.1986), *aff'd,* 81 B.R. 580 (B.A.P. 9th Cir.1987). The circumstances of the case control the Court's decision on whether a reasonable inquiry into the facts was made. Particular circumstances to focus on include the amount of time for investigation that was available to the signator, how much reliance the attorney had to place on the client for the facts behind the case, whether prefiling investigation was feasible, the complexity of the factual and legal issues and how much time the attorney had to prepare the document. *In re Oakgrove Village, Ltd.,* 90 B.R. 246, 250 (Bankr.W.D. Tex.1988) (Citing *Thomas v. Capital Sec. Services, Inc.,* 812 F.2d 984, 988 (5th Cir. 1987) (modified at 836 F.2d 866)); *see also* Advisory Committee's Note to 1983 Amendment to Rule 11. The court in *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986), noted that the amount of reasonable inquiry that Rule 11 requires is "that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions."

█ Balanced against these considerations of reasonable inquiry, defensible positions and meritorious claims, is the fear of chilling zealous and vigorous advocacy by attorneys on behalf of their clients. *See Golden Eagle Distribution Corp. v. Burroughs Corp.,* 801 F.2d at 1540. This is also supported by the Advisory Committee's note to the 1983 amendment of Rule 11: "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Advisory Committee's Note to 1983 Amendment to Rule 11.

█ Sabino asserts that under the circumstances of this case, filing the petition was an indefensible, frivolous, unmeritorious act for the Debtor's attorneys and the Debtor to do. In support of its assertion, Sabino points to Debtor's attorneys' lengthy representation of U.S. Hotel Properties with regard to the Cedar Falls Holiday Inn property. Additionally, Debtor's attorneys represented U.S. Hotel Properties in state court foreclosure proceedings against Sabino and other creditors, but never informed the creditors or the state court that U.S. Hotel Properties had transferred ownership of the Cedar Falls Holiday Inn during the midst of the proceedings. Sabino points to this failure to inform as an indication that the Debtor's attorneys were fully aware of the circumstances surrounding the case and should have been aware that the filing was frivolous and unmeritorious.

Debtor's attorneys assert that they thought U.S. Hotel Properties had a valid business reason for transferring ownership of the Cedar Falls Holiday Inn from U.S. Hotel Properties to a new entity, whose sole asset was to be the Cedar Falls Holiday Inn. That business reason was to separate and isolate a financially troubled property from other property of U.S. Hotel Properties which was not so financially troubled, in order to increase chances of obtaining financing to restructure the debt encumbering the Cedar Falls Holiday Inn.

█ Because the test is an objective one, not subjective, what the signator believed is not particularly relevant. The relevant question is whether under the circumstances of this case a reasonable attorney could have believed that an effective reorganization was possible.

The Debtor testified through Horst Osterkamp that it believed that the value of the Cedar Falls Holiday Inn was approximately $7.5 million dollars. This amount was roughly equal to the amount of liabilities the Debtor owed. If the Debtor's valuation was correct, the Debtor may have had a good faith argument that a realistic reorganization was possible in spite of the new debtor syndrome. The Court, however,

found that the property was worth only approximately $3.5 million. Sabino attorneys' insist that they thought, and still think, that the property was worth more than $3.5 million.[4] Given the conflicting opinions regarding value, the Court believes that the Debtor could have had an objectively reasonable, good faith belief that the property was worth more than $3.5 million.

Debtor's attorneys submitted into evidence documents which they assert constitute the notes reflecting the research which Debtor's attorneys undertook regarding this case. Some of the notes are from cases specifically discussing the new debtor syndrome and bad faith filings. Other research that Debtor's attorneys indicate that they performed includes a memorandum by one of Debtor's attorneys written in 1986 on an unrelated matter. Additionally, the Debtor's attorneys have submitted a copy of an article which discusses good faith in bankruptcy. These notes reflect a reasonable inquiry.

The Court finds that it is possible to make an objectively reasonable, good faith argument for Debtor's position. Not every case in which allegations of the Debtor being a new debtor results in the stay being lifted or the case being dismissed. *See e.g., Myers v. The Beach Club (In re The Beach Club)*, 22 B.R. 597 (Bankr.N.D. Cal.1982) (Only asset of debtor was piece of property transferred to debtor on eve of bankruptcy, court found that good reason existed for the transfer and refused to grant relief from the stay). Neither this Court nor the Eighth Circuit had decided a new debtor case before, so Debtor's attorneys could not reliably predict how the Court would rule. Even though this case's fact pattern fit the new debtor syndrome as described in other jurisdictions, the outcome of this case was not pre-ordained. A reasonable attorney could have had a good faith belief that the Court would find that

the value of the Cedar Falls Holiday Inn to be over seven million dollars and that an effective reorganization was possible.

This Court has previously held that an effective reorganization may include a liquidation in a chapter 11 case. *See In re W.S. Sheppley & Co.*, 45 B.R. 473, 479 (Bankr.N.D. Iowa 1984). Thus, if the Debtor had filed bankruptcy to liquidate the Cedar Falls Holiday Inn, rather than liquidating it through a sheriff's sale, that would have been a legitimate objective.

The Court is aware that these scenarios are hypothetical, as they do not reflect what really happened. However, "[w]hether a claim is colorable depends upon 'whether a reasonable attorney could have concluded that facts supporting a claim *might be established*, not whether such facts actually *had been established.*'" *Chaudhry v. Usoskin (In re Usoskin)* 61 B.R. 869, 873 (Bankr.E.D.N.Y.1986) (emphasis in original, citations omitted). In this case, a reasonable attorney could have concluded that a legitimate attempt to reorganize might be possible.

The problem with the filing of this case lies in the fact that although it *could* have been an objectively reasonable filing, it was filed for an improper purpose, namely that of removing the state court receiver.

### Improper Purpose

■ Virtually every bankruptcy petition is filed with the intent to delay creditors to some extent. This is generally referred to as giving the debtor "breathing room" to get back on its feet in order to make it better able to pay off its creditors. Bankr. Rule 9011 requires that the signature on the petition act as a certificate that the petition is not filed for "any improper purpose." The question therefore is whether the Debtor's purpose in seeking delay was improper or not.[5]

---

4. Sabino's attorneys adhere to this point in apparent contrast to their client's belief. An officer of Sabino's parent corporation testified that he thought the property was worth between three and three and a half million dollars. Transcript of Hearing on August 22, 1988, p. 13.

5. *See In re Food Workshop, Inc.,* 70 B.R. 962, 967 n. 3 (Bankr.S.D.N.Y.1987) ("To the extent that [filing bankruptcy] fosters 'delay,' every bankruptcy petition would be violative of Rule 9011; the rule must be read in harmony with the goals of bankruptcy.").

The Court has already noted that U.S. Hotel Properties, the Debtor, and their attorneys were less than forthcoming with regards to the transfer of the Cedar Falls Holiday Inn from U.S. Hotel Properties to Cedar Falls Hotel Properties, Ltd. The timing of the transfer suggests that U.S. Hotel Properties and the Debtor were playing games. Most incriminating is the fact that the transfer was not disclosed to the creditors or the court when U.S. Hotel Properties was in state court foreclosure proceedings. The first time that the creditors were given notice of the transfer was when Cedar Falls Hotel Properties filed its bankruptcy petition. In the state court foreclosure proceedings, judgment was entered on a Motion for Summary Judgment on behalf of Midland Financial. Because of the lack of disclosure regarding the transfer, the state court entered a judgment of foreclosure against U.S. Hotel Properties, which was no longer the owner of record of the Cedar Falls Holiday Inn. A state court receiver was appointed. A sheriff's sale was going to be scheduled and held until the filing of the bankruptcy petition stayed all such actions.

In *In re Oakgrove Village, Ltd.*, 90 B.R. 246 (Bankr.W.D.Tex.1988), the court was faced with a situation similar to the one at hand. In that case, however, the debtors consented to the creditor's Motion for Relief from Stay before the hearing on that matter was held. The creditor then moved for sanctions against the debtors, asserting that the case was filed in bad faith and therefore sanctions were warranted. The court noted that the facts in the case reflected that the case was filed in bad faith and suffered from the new debtor syndrome. The court held that "[t]o impose sanctions for [a] *mere* 'bad faith' filing, without more, would be improper." *Oakgrove Village*, 90 B.R. at 251 (emphasis in original). The *Oakgrove Village* court suggested what "more" might be enough in addition to a finding of a bad faith filing to warrant sanctions pursuant to Bankr. Rule 9011: Had the debtor been engaged in a multitude of state court proceedings; had the debtor had entered into a settlement agreement and merely sought to delay the

implementation of that agreement; or if the debtor after filing the petition failed to file schedules, attend a § 341 meeting, or consent to an examination under Rule 2004, sanctions might have been warranted under Bankr.Rule 9011. Additionally, had the debtors in that case not consented to the relief from stay but continued to contest the motion, then sanctions might have been warranted for failure to correct a violation of Bankr.Rule 9011 that had occurred due to changed circumstances.

The court in *In re Southern California Sound Systems, Inc.*, 69 B.R. 893, 899–900 (Bankr.S.D.Cal.1987), dismissed the case before it on the grounds that the case was filed in bad faith. Relying on the factors set forth in *Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986), the court found that the true purpose of the petition was other than to reorganize the financially distressed business. The creditor in that case moved for sanctions pursuant to Bankr.Rule 9011 on the grounds that because the petition was filed and dismissed due to the debtor's bad faith, sanctions pursuant to Rule 9011 were therefore appropriate. The court noted that "[t]he standards for dismissing a case under § 1112(b) are different from the standards used to impose sanctions under Bankruptcy Rule 9011. Such a *per se* rule for the imposition of sanctions is inappropriate, particularly in an area of bankruptcy practice which is rapidly developing (i.e., bad faith filings)." *Southern California Sound Systems, Inc.*, 69 B.R. at 901. In that case, the debtor's sole purpose for filing bankruptcy appeared to be to reject a contract that it had just recently entered into. The court found that it was possible that debtor's counsel had made a good faith argument for the extension of existing law, and therefore sanctions under Bankr.Rule 9011 were not appropriate.

The cases of *Oakgrove Village* and *Southern California Sound Systems, Inc.* appear to be the minority rule. Many courts, after finding that the debtor's petition was filed in bad faith (warranting dismissal of the case or relief from the stay), find that finding of bad faith sufficient to

warrant the imposition of sanctions. *See e.g. In re Eighty South Lake, Inc.,* 63 B.R. 501 (Bankr.C.D.Cal.1986), *aff'd,* 81 B.R. 580 (B.A.P.9th Cir.1987); *In re French Gardens, Ltd.,* 58 B.R. 959 (Bankr.S.D.Tex. 1986); *Unifirst Bank v. Park Timbers, Inc. (In re Park Timbers),* 58 B.R. 647 (Bankr.D.Del.1985); *In re Winn,* 53 B.R. 645, 649 (Bankr.M.D.Fla.1985); *In re Silver,* 46 B.R. 772 (D.Colo.1985). To be sure, the majority rule cases may all have had something more beyond a "mere" bad faith filing, but the courts' analyses did not make this distinction.

In this case, there was more than a "mere" bad faith filing. One of the major issues in the case was whether to allow the state court appointed receiver, Larken, Inc., to remain in place after the bankruptcy petition had been filed or to remove it and allow the Debtor to become a Debtor in Possession. It is on this issue that the Court finds that filing of the petition sinks to the level of sanctionable conduct. The Court is convinced that the Debtor filed bankruptcy for the singular goal of removing the state court appointed receiver and did not file bankruptcy to make a legitimate effort at reorganization. For whatever reason, the Debtor ultimately gave up on ousting the state court receiver. A legitimate effort at reorganization would have resulted in the state court receiver being left in place by consent, from the start of the proceedings. The status of the receiver should not have been contested. This is certainly true in light of the creditors' often expressed concerns about the flow of cash from the Cedar Falls Holiday Inn to California and the subsequent failure to account for the money.[6]

The Court would be more convinced that Cedar Falls Hotel Properties Limited Partnership was revived or recreated to own the Cedar Falls Holiday Inn for a valid business purpose had the transfer from U.S. Hotel Properties to the Cedar Falls Hotel Properties Limited Partnership not been executed in such a clandestine and devious manner. The fact that all parties concerned were in state court foreclosure proceedings, plus the fact that all parties involved met for at least four hours in California to discuss another project of U.S. Hotel Properties during which time the transfer of ownership of the Cedar Falls Holiday Inn was never mentioned, strongly suggests that U.S. Hotel Properties and Cedar Falls Hotel Properties Limited Partnership were trying to sneak something past the creditors and the state court. The Court does not accept the Debtor's assertion that there wasn't enough time to raise this issue or that the meetings were strictly related to other matters. Combining all these facts, the Court is convinced that the Debtor filed its petition with an improper purpose.

## SANCTIONS TO BE IMPOSED

■ Upon the determination that Bankr. Rule 9011 has been violated, sanctions must be imposed by the Court upon the offending party. *See Featherston v. Goldman (In re D.C. Sullivan Co., Inc.),* 843 F.2d 596, 599 (1st Cir.1988) ("Once it is ascertained that Rule 9011 was transgressed, the bankruptcy court must select and impose an appropriate sanction."); *Midwest Properties No. Two v. Big Hill Inv. Co., Inc.,* 93 B.R. 357, 361 (N.D.Tex. 1988) ("[T]he imposition of sanctions is mandatory once a violation of Rule 9011 is found ..."); *Matter of King,* 83 B.R. 843, 848 (Bankr.M.D.Ga.1988) ("Rule 9011 clearly states that a court shall impose appropriate sanctions once it has determined that a bankruptcy petition was filed for an improper purpose.").

■ The Court has, however, great discretion in determining what sanction to impose, once a violation of Rule 9011 has been found. *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 876–77 (5th Cir. 1987). The sanctions the Court could im-

---

**6.** When questioned about what this money was used for, Horst Osterkamp was never more specific than to inform the questioner that it was used for "other partnership purposes." Additionally, depositions of the accountants employed by U.S. Hotel Properties I failed to shed much light on what that money was used for after it was removed from the Cedar Falls Holiday Inn.

pose include "a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances," *Thomas,* 836 F.2d at 878, or even "reference to a bar association grievance committee," *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151, 158 (3rd Cir.1986).

 Sabino asserts that this case was such a clear and plain violation of the intent and spirit of the Bankruptcy Code that strong and severe sanctions are warranted. In the Court's Order Granting Relief from Stay, the Court had little trouble in finding that the case had been filed in bad faith warranting relief from the automatic stay. The Court thought that it was a fairly straight forward case based on the application of cases such as *Matter of Little Creek Development Co.,* 779 F.2d 1068 (5th Cir.1986) and *In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984). *See* Order Granting relief From Stay, slip op. at 11–14. Sabino's attorneys, however, have convinced the Court that the case was not so straight forward. Sabino's attorneys submitted a bill to its client for over $150,000 for representation of Sabino in this case. Over $100,000 of that was stated to be the direct result of the bankruptcy filing. Sabino's attorneys had up to five different attorneys working on this case, including a senior litigation partner whose time was billed at $180/hour. According to the time records submitted, this case consumed most of that litigation partner's time between August and December. As many as four attorneys worked on the case on a given day. Surely if the case were as clear cut and straight forward as Sabino's attorneys now claim it is, they would not have had to run up such a large bill for their client.

Sabino's attorneys' claim that the reason for their extremely high bill was due to the expedited nature of the case, because the case proceeded so quickly it required a heavy concentration of resources in a very

short amount of time. The Court agrees that the case was expedited, but also notes that this was mainly at Sabino's insistence.

The Court is aware that the relationship between Sabino and U.S. Hotel Properties extends beyond the Northern District of Iowa.[7] The Court is also aware that the bankruptcy case in this Court was proceeding faster than the cases in other courts, and that Sabino was pressing hard to establish favorable precedent in this Court to use elsewhere. That Sabino chose that strategy is fine, but they cannot come to the Court and complain that the fault for the large bill to Sabino rests on the Debtor. The Court has little doubt that Sabino pursued this case so vigorously because of its relationship with U.S. Hotel Properties outside this jurisdiction.

The senior lien holders, Mid–America and Midland Financial, did not move for sanctions against the Debtor, only Sabino so moved. As a result of the Court's finding regarding valuation, Sabino was found to be almost a fully unsecured creditor. Although Sabino's attorneys still insist that they never conceded the point of valuation and they continue to maintain that the Cedar Falls Holiday Inn was worth more than the 3.4 million dollars the Court found that it was worth, the Court notes that the Chief Financial Officer, Senior Vice President, and member of the Board of Directors of Tucson Electric Power Co., Mr. Kenneth L. Saul, testified that he thought that "the hotel was worth between 3 and 3½ million dollars." Transcript of Hearing on August 22, 1988, p. 13. Thus, although Sabino knew that it was unsecured or at best hopelessly under secured, Sabino's attorneys pursued the case as though Sabino was a fully secured creditor. As a result of that litigation strategy, Sabino's attorneys fees were run skyward in a short period of time. Sabino's attorneys now insist that results obtained by the party moving for the sanctions should not be part of a determination of whether to impose sanctions. That may be so, but the results

**7.** Testimony indicated that Sabino had loaned over $15 million to U.S. Hotel Properties or related entities.

obtained should certainly be a part of the determination about what sanction to impose.

In the typical "bad faith filing, therefore sanctions" case, the courts are reluctant to award sanctions that would cover the creditor's expenses. For example, in *In re Eighty South Lake, Inc.,* 63 B.R. 501, 510–11 (Bankr.C.D.Cal.1986), *aff'd,* 81 B.R. 580 (B.A.P.9th Cir.1987), the court awarded sanctions of approximately $40,000, after finding that expenses close to $150,000 were actually incurred as a direct result of the bankruptcy filing (sanctions of $313,000 were requested). The *Eighty South Lake* court awarded the largest amount of sanctions that this Court was able to find in a "bad faith filing, therefore sanctions" case. The more typical case finds awards of about $250–$3000. *See e.g., Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584 (3rd Cir.1985) (Affirming award of $3000 in sanctions); *Matter of Bellew,* 71 B.R. 72, 74 (Bankr.M.D.Fla.1987) (Awarding $250 in sanctions); *In re Waters,* 60 B.R. 339, 344 (Bankr.E.D.Wis.1986) (Awarding $500 in sanctions); *In re Winn,* 53 B.R. 645, 649 (Bankr.M.D.Fla.1985) (Awarding $820 in sanctions); *In re Kinney,* 51 B.R. 840, 848 (Bankr.C.D.Cal.1985) (Awarding $2500 in sanctions). The Court notes that these amounts would barely make a dent in the overnight mail and fax charges that Sabino's attorneys' incurred in this case.

Deterrence is a principal policy behind Rule 9011. *Thomas,* 836 F.2d at 877; *but see Lupo v. R. Rowland and Co.,* 857 F.2d at 485–86 ("The purpose of Rule 11 is to 'compensat[e] the offended party for the expenses caused by a violation as well as penaliz[e] the offender.'") (citations omitted); *see also Lieb,* 788 F.2d at 158 ("The compensatory, punitive, and deterrent aspects of sanctions may have varying claims to priority, depending on the nature of the case and the violation, as well as on the standing of the parties and counsel."). The Court's primary goal in imposing sanctions in this case is not so much focused on this Debtor and its attorneys, but to discourage other parties and attorneys from proceeding as the Debtor and its attorneys did in this case.

Imposing sanctions against the Debtor would probably have little deterrent effect on the Debtor. The Court is convinced that the Debtor will not file another bankruptcy petition. The Debtor has no more property, as the Cedar Falls Holiday Inn was sold at a sheriff's sale in January of this year. Further, if monetary sanctions were to be imposed against the Debtor, that would simply reduce the size of the estate that could be used to pay unsecured creditors. The major unsecured creditor in this case happens to be Sabino. It wouldn't really make much difference to the Debtor whether its assets were divided up to pay sanctions to Sabino or to pay Sabino as an unsecured creditor. Thus, the Court finds that the role of deterrence would not be served by imposing monetary sanctions against the Debtor in this case.

Horst Osterkamp signed the petition on behalf of Cedar Falls Hotel Properties. The Court is of the belief that Mr. Osterkamp is the major moving force behind the bad faith filing of this petition. Consequently, the Court will impose a sanction against Horst Osterkamp in the sum of $2,500. This sanction is in line with sanctions imposed in cases of this sort. *See supra.* The Court is aware that the practical effect of the imposition of this sanction may be almost non-existent. Sabino has not vigorously pursued sanctions against Mr. Osterkamp, presumably due to the fact that he is evidently personally liable for most of the 15 million dollars of debt owed by the various entities controlled by U.S. Hotel Properties to Sabino.

The Court could impose monetary sanctions against the Debtor's attorneys. *See Matter of Pasko,* 97 B.R. 913, 918 (Bankr. N.D.Ill.1988) ("Courts allocate sanctions between the attorney and the client according to their relative culpability in violating Rule 11."). Sabino pushed hardest for sanctions against the Debtor's attorneys. Sabino's attorneys have represented, without proving, the Debtor's attorneys to be a "deep pocket," based on the Debtor's attorneys allegedly lucrative law practice in the city of Waterloo, Iowa. Sabino asks that at a minimum, Debtor's attorneys be de-

nied compensation for services rendered in the case and forfeiture of any retainer received. *See* Post Trial Brief of Sabino, p. 4.

The Court finds that monetary sanctions payable from Debtor's attorneys to Sabino are not appropriate in this case, due to the novel nature of the case in this jurisdiction. While monetary sanctions may have a strong penalizing effect on Debtor's attorneys, the Court is convinced that lesser sanctions will also have a strong penalizing and deterrent effect on them, as well as other attorneys. *See Thomas*, 836 F.2d at 878 ("We specifically adopt the principle that the sanction imposed should be the least severe sanction adequate to the purpose of Rule 11.").

The sanctions the Court imposes is a strong reprimand. The Debtor's attorneys have been involved with the Cedar Falls Holiday Inn for a number of years, and they have apparently also been involved with Horst Osterkamp and U.S. Hotel Properties for a number of years. The lack of disclosure regarding the transfer of ownership of the Cedar Falls Holiday Inn and the subsequent attempts to dislodge the state court receiver from its appointed position are actions that cannot be tolerated. The creditors, including Sabino, have a right to realize the benefits of their bargain. Tactics adopted by the Debtor's attorneys to delay the creditors and obfuscate the proceedings should not go without note. The Debtor's attorneys should have known better, and should have conducted themselves in a more forthright manner.

■ Sabino asks that Debtor's attorneys be denied compensation for services rendered in the case and that the retainer they have received be forfeited. Debtor's counsel has not filed a final fee application in this case, and therefore, no determination has been made by the Court as to what fees, if any, will be allowed to Debtor's counsel. Consequently, there are no fees to be forfeited at this time. Undoubtedly, the issue of whether the services rendered by the Debtor's counsel were a benefit to the estate will be raised at the time a final fee application is filed. The issue of the benefit to the estate of Debtor's services

can be litigated at that time. The Court is not inclined to deny compensation as a Rule 9011 sanction, but rather to consider the compensation issue in the context of application for allowance of fees pursuant to § 330 of the Bankruptcy Code.

Sabino's attorneys should not be smiling. The Court is not pleased with their conduct either. Sabino's attorneys would have this Court believe that a legal bill approaching $150,000, including out of pocket expenses of over $25,000 for such items as private airplane charters, hotel and meal expense, and overnight mail and fax delivery services, is reasonable. The assertion that such a bill is a direct result from the Debtor's filing this particular bankruptcy petition flirts with sanctions as well. *See Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987) ("An excessive request for fees is a sanctionable event ...."). The bill is about four or five times what the case called for. In fact, if Sabino did not do anything, they would be in exactly the same position as they are now, almost fully unsecured. That Sabino has an ax to grind with U.S. Hotel Properties and Horst Osterkamp is fine, but they should not expect this Court to willingly act as their bludgeon against those parties.

## MOTION FOR SANCTIONS AGAINST SABINO AND ITS ATTORNEYS

■ The Court granted Sabino's request for sanctions against the Debtor and its attorneys. It would be incongruous to impose sanctions against the prevailing party for making the motion in which they prevailed. Courts often refuse to grant sanctions against a party who filed a motion for sanctions and lost. *See In re Food Workshop, Inc.*, 70 B.R. 962, 967 (Bankr.S. D.N.Y.1987) ("The denial of one party's request for rule 11 sanctions does not necessarily give rise to the imposition of sanctions on the losing party for having sought that relief."). This is an especially good rule where the party's request for Rule 11 or 9011 sanctions was granted.

## ORDER

IT IS THEREFORE ORDERED that Sabino's Motion for Sanctions Against Debt-

or, Horst Osterkamp, and Debtor's Attorneys is granted. Debtor and Debtor's attorneys are sanctioned by this Court's issuance of a reprimand for the bad faith filing of this case. Horst Osterkamp is sanctioned by awarding reimbursement of fees and expenses to Sabino in the sum of $2,500.

IT IS FURTHER ORDERED that Debtor and Debtor's Attorneys Motion for Sanctions Against Sabino and its Attorneys is denied.